81 N.J. Super. 585 (1963)
196 A.2d 282
ROSE MAGER, AS GENERAL ADMINISTRATRIX AND AS ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF FRANK MAGER, DECEASED, PLAINTIFFS,
v.
UNITED HOSPITALS OF NEWARK AND NEW JERSEY MANUFACTURERS CASUALTY INSURANCE COMPANY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Argued December 13, 1963.
Decided December 19, 1963.
*586 Mr. Abraham I. Harkavy argued the cause for plaintiffs (Messrs. Harkavy & Lieb, attorneys; Mr. Harkavy on the brief).
Mr. Robert Schwankert argued the cause for defendant United Hospitals of Newark (Messrs. Mead, Gleason, Hansen & Pantages, attorneys; Mr. Schwankert on the brief).
Mr. John M. McCue argued the cause for defendant, New Jersey Manufacturers Casualty Insurance Company (Mr. Edward V. Ryan, attorney; Mr. John M. McCue on the brief).
BARRETT, J.C.C. (temporarily assigned).
This matter is before the court on the motion of New Jersey Manufacturers Casualty Insurance Company for summary judgment as to all claims against it, primarily those of plaintiff who sues as general administratrix and as administratrix ad prosequendum. In the former capacity she seeks to recover for personal injuries suffered by her husband in his lifetime, and in the latter capacity she seeks recovery for his wrongful death on March 12, 1963.
Decedent Frank Mager, on May 12, 1960, was employed by American Window Cleaning Co., which in turn was insured for workmen's compensation by defendant New Jersey Manufacturers (hereinafter referred to as the insurance company). In the course of his employment Mager suffered injuries for which he received temporary and permanent disability from the insurance company.
*587 Pursuant to the instructions of his employer at the time of his injury, he was taken to and treated at an industrial clinic. The clinic was admittedly maintained and operated by the insurance company.
It is alleged that due to the negligence of the insurance company, decedent's leg was first amputated and then he died. Defendant United Hospitals of Newark is also charged with negligence which was a cause or a substantial contributing factor in the same amputation and the ultimate death.
United Hospitals by way of crossclaim seeks contribution and indemnification from the insurance company. As to the claim for contribution under the Joint Tortfeasor's Act, its disposition is dependent upon the validity of the main suit. As to the indemnification claim, there is not set forth in the pleadings any basis, by contract or otherwise, for making the insurance company liable to United Hospitals for all or part of plaintiff's claim. Therefore the claim for contribution will fail if I dispose of this motion adversely to plaintiff.
As regards plaintiff's complaint against the insurance company, the primary question to my mind is whether a workmen's compensation insurance carrier can be liable in tort to the administratrix of a decedent beneficiary of the insurance for the aggravation of his work-connected injury and ultimate death through negligent treatment in a clinic maintained and operated by the company?
There is no dispute about the facts necessary to this decision. Admittedly, New Jersey Manufacturers is the insurer of Mager's employer. Subsequent to the death of Mr. Mager, a workmen's compensation dependency petition was filed on behalf of the widow against the employer, the American Window Cleaning Co., to which the insurance company filed an answer. That petition is still pending.
The weight of authority in the country is against this type of action.
In Raines v. Pennsylvania Thresherman, etc., Ins. Co., 123 A.2d 420 (Pa. Sup. Ct. 1956), there was a similar type of action based upon a carrier's alleged failure to furnish *588 claimant with competent and adequate medical care. The court said:
"The defendant company's sole liability to the appellant is under its policy of compensation insurance which it issued to the appellant's employer. The insurance company is a party to the pending compensation proceeding, and the appellant will be able therein to claim for his injuries, including the loss of his leg, once the causal connection between the original sprain and the leg amputation is established." (at p. 422)
The court in Raines discusses the absence of any proof from which could be derived a finding of negligence on the part of the insurance company that was the proximate cause of the aggravation of the appellant's injury. This could have been the basis for the court's statement above. However, a later case cites Raines for the proposition that
"[T]he carrier's liability for supplying negligent medical care after an accident is limited by the Compensation Act." Mays v. Liberty Mutual Insurance Co., 211 F. Supp. 541, 544 (E.D. Pa. 1962)
Thus the quoted portion of Raines probably properly states the law of Pennsylvania on the subject.
Plaintiff cites Waldron v. Aetna Casualty Surety Co., 141 F.2d 230 (3 Cir. 1943), for the proposition that Pennsylvania allows such suits. This type of defense was never raised in Waldron. Later in 1956, Raines was decided. Further, Raines distinguished Waldron, 123 A.2d, at p. 422.
In Schulz v. Standard Accident Ins. Co. of Detroit, 125 F. Supp. 411 (D.N.D. 1954), the employee allegedly received substantial injury because of the negligence of a doctor retained by the employer's insurance carrier to examine. In the suit against the carrier the court said:
"In this action, defendant, as insurance carrier, stands on precisely the same footing so far as liability to plaintiff is concerned, as plaintiff's employer. If plaintiff could not recover against his employer on the claim advanced in his complaint, he cannot recover against the defendant." *589 Citing a number of cases, the court said there could be no recovery against the insurance carrier.
This problem has arisen under the Federal Longshoremen's and Harbor Workers' Compensation Act. In Fernandez v. Gantz, 113 F. Supp. 763 (D.D.C. 1953), the question propounded by the court was "whether the employer and carrier are liable in a suit at law for the malpractice of physicians furnished by them to an employee." The insurance company's motion for summary judgment was granted against the plaintiff on the ground that the:
"employer is liable for all legitimate consequences following an accident, including unskillfulness or error of judgment of the physician furnished."
A California court has stated its rule on such matters in the case of Duprey v. Shane, 39 Cal.2d 781, 249 P.2d 8, 13 (1952), where the court said:
"It seems equally clear that, when an employee is injured in an industrial accident, and the attending physician retained by the insurance carrier is negligent and causes a new injury, the employee may not only sue the employer (or the carrier) before the Commission, but may also sue the doctor for malpractice,"
even if the doctor is the employer. This case is contrary to an earlier case dealing with California law, Sarber v. Aetna Life Insurance Co., 23 F.2d 434 (9 Cir. 1928) which held that the employee's exclusive remedy was under the Workmen's Compensation Act for injuries which were aggravated by the negligence of the employer's selected physician.
New Jersey does not have any cases which would be controlling on this point. However, Judge Leyden sitting in the County Court in Burns v. Velardo, 26 N.J. Misc. 277, 60 A.2d 94 (1948) held that a suit against the plant physician for aggravation of injuries which were work-connected could not lie because such injuries were compensable exclusively under the Workmen's Compensation Act. I would not reach this result on the judge's reasoning. Of course, at the time of this *590 decision the Workmen's Compensation Act did not bar, as it does now, suits against fellow employees.
A later New Jersey case, Dettman v. Goldsmith, 11 N.J. Super. 571 (Cty. Ct. 1951), held that an injured employee could sue the physician treating her for an injury arising out of her employment, for negligence. Though Dettman cited Burns with disapproval, nowhere in Dettman is it stated that the treating physician is in any way connected with the employer or the insurance carrier. The court by way of dictum did, however, say:
"Even assuming there might be a master and servant relationship between the employer and the treating physician (and our courts have held there is not) when the latter is charged with negligence by the employee he can be held answerable therefor." (at p. 575)
There is a well reasoned decision by Maryland's highest court, based upon a statute very similar to the New Jersey statute, which concludes that actions such as the present are barred by the statute. In the case of Flood v. Merchants Mutual Insurance Company, 230 Md. 373, 187 A.2d 320, 322 (Ct. App. 1963), the issue as stated by the court was:
"* * * can a person who has received benefits under the workmen's compensation law * * *, maintain a subsequent action in tort for negligence against the insurer of his employer for alleged malpractice by physicians provided by the insurer in their treatment of the person's injury."
The court then discussed the point that when the Maryland legislature authorized employers to contract with insurance companies in order to cover possible claims, it intended the insurance company to stand in the position of the employer:
"* * * This is nowhere better demonstrated than in Article 101, § 58 (when third party liable), which provides that if it is necessary for the employer or insurance company to pay benefits to an employee for injuries sustained which are due to a third party's negligence, the self-insured employer or `insurance company * * *' may enforce for their own benefit the third party's liability."
*591 There the court held that a suit against the insurance company is barred by workmen's compensation act, as would be such a suit against the employer.
The New Jersey statute has an almost identical clause, N.J.S.A. 34:15-40(f), which reads where pertinent, regarding the liability of a third person when the injured employee neither effects a settlement with the third person nor institutes proceedings against the third person:
"* * * the employer or his insurance carrier * * * can either effect a settlement with the third person or his insurance carrier or institute proceedings against the third person for the recovery of damages for the injuries. * * *"
As this section reads, it certainly was not envisioned that the insurance carrier would be a third party, or the insurance carrier would be permitted to sue itself, an absurd result.
Throughout the statute the employer is equated with his insurance carrier. For example, in N.J.S.A. 34:15-33 notice to an employer of an occupational disease is considered notice to the insurance carrier, and vice versa. And in N.J.S.A. 34:15-34 an agreement to pay by an insurance carrier is an agreement to pay by the employer. Penalties are provided in N.J.S.A. 34:15-79 for employers who are not financially able to be self insurers and do not insure through an insurance company.
In R.S. 34:15-15, where the employer is obligated in some circumstances to either furnish or pay for medical services rendered to the employee the Division of Workmen's Compensation is empowered to require "the employer or his insurance carrier" to furnish artificial limbs or appliances, etc. Also in N.J.S.A. 34:15-15.1 the Division is authorized to order the employer or his insurance carrier, to reimburse any insurance carrier, etc., the amount it has paid for medical services on behalf of petitioner, if petitioner himself would be entitled to reimbursement. There are many other sections where the same equating of the two appears. In short, the total scheme of the act indicates a pattern of equalizing the carrier and *592 the employer, especially in the vital third party recovery section.
On the basis of the weight of authority on the subject and the interpretation of the New Jersey statute, I find that the suit against the insurance company will not lie, nor will the claim for contribution of United Hospitals. Also, as stated above, the latter's claim for indemnification falls.
To rule otherwise in this action would mean that a completely new type of litigation would spring into being  one for which insurance companies have not bargained.
There are cases which arrive at a different result: for example, Smith v. American Employers Insurance Co., 102 N.H. 530, 163 A.2d 564 (1960); and Fabricius v. Montgomery Elevator Company, 121 N.W.2d 361 (Iowa Sup. Ct. 1963).
Smith permitted an employee's action against a workmen's compensation carrier for negligence in inspecting the employer's machinery and equipment. There was no obligation imposed upon the carrier by statute to inspect; rather, as the court stated:
"So far as the defendant is concerned, its alleged liability is not that of an employer, under the Law, but one arising out of an alleged breach of common-law duty." (at p. 567)
However, R.S. 34:15-15, as previously discussed, creates an obligation on the part of the employer, and inferentially on the part of the insurer, to furnish or pay for the medical care of the employee.
In Fabricius there is a similar allowance of an action against a carrier on the theory of negligent inspection "gratuitously undertaken." Again, the action was not based on duty imposed by the statute.
Despite these distinctions, the philosophy of these opinions would probably permit an action here, but I reject this philosophy.
An appropriate order may be submitted.