Bernard **KOTARSKI**, Special Administrator of the Estate of Frederick E. Gutowski, deceased, Plaintiff,

v.

**AETNA CASUALTY AND SURETY COMPANY**, a Connecticut corporation, Defendant.

Civ. No. 25587.

United States District Court
E. D. Michigan, S. D.

Aug. 12, 1965.

George L. Downing, Kelman, Loria, Downing & Craig, Detroit, Mich., for plaintiff.

Buell Doelle, Vandeveer, Haggerty, Doelle, Garzia, Tonkin & Kerr, Detroit, Mich., for defendant.

KAESS, District Judge.

This action is brought by the Administrator of the Estate of Frederick E. Gutowski, decedent, an employee of the Goodyear Tire and Rubber Company, who was fatally injured at its plant in Jackson, Michigan, on December 26, 1963, in an accident arising out of and in the course of his employment. The defendant, Aetna Casualty and Surety Company, is the workmen's compensation insurance carrier for Goodyear and has entered into payment of the statutory benefits to the widow and child.

The accident occurred when Gutowski was operating a machine known as a rubber calendar, which consists of two large rolls, placed one above the other, rotating in such a way as to pull any object placed between them into a 4½ inch opening. While working in a space 24 inches wide, next to the machine, decedent was drawn through the opening and crushed to death. The machine was

not equipped with any device designed to stop the rolls if a person or his clothing should become entangled in the rolls.

This action is brought pursuant to the third-party liability provision of the Michigan Workmen's Compensation Act, which allows an injured employee to accept workmen's compensation benefits and also proceed against a third person who caused the injury.[1]

Plaintiff alleges in his complaint that Aetna voluntarily undertook to provide safety inspection services for the benefit of Goodyear and its employees; that it negligently performed this undertaking by failing to conduct regular inspections,

---

1. § 17.189 Third person liable for injury; right of employee to sue and seek compensation; right of employer and insurer to enforce liability; notice of action; settlement and release of claim, effect; amount of recovery; reimbursement of employer or insurer; expenses of recovery, apportionment; compensation benefits.

Sec. 15. Where the injury for which compensation is payable under this act was caused under circumstances creating a legal liability in some person other than a natural person in the same employ or the employer to pay damages in respect thereof, the acceptance of compensation benefits or the taking of proceedings to enforce compensation payments shall not act as an election of remedies, but such injured employee or his dependents or their personal representative may also proceed to enforce the liability of such third party for damages in accordance with the provisions of this section. If the injured employee or his dependents or personal representative does not commence such action within 1 year after the occurrence of the personal injury, then the employer or its compensation insurance carrier may, within the period of time for the commencement of actions prescribed by statute, enforce the liability of such other person in the name of that person. Not less than 30 days before the commencement of suit by any party under this section, such party shall notify, by registered mail at their last known address, the workmen's compensation commission, the injured employee, or in the event of his death, his known dependents, or personal representative or his known next of kin, his employer and the workmen's compensation insurance carrier. Any party in interest shall have a right to join in said suit.

Prior to the entry of judgment, either the employer or his insurance carrier or the employee or his personal representative may settle their claims as their interest shall appear and may execute releases therefor.

Such settlement and release by the employee shall not be a bar to action by the employer or its compensation insurance carrier to proceed against said third party for any interest or claim it might have.

In the event the injured employee or his dependents or personal representative shall settle their claim for injury or death, or commence proceeding thereon against the third party before the payment of workmen's compensation, such recovery or commencement of proceedings shall not act as an election of remedies and any moneys so recovered shall be applied as herein provided.

In an action to enforce the liability of a third party, the plaintiff may recover any amount which the employee or his dependents or personal representative would be entitled to recover in an action in tort. Any recovery against the third party for damages resulting from personal injuries or death only, after deducting expenses of recovery, shall first reimburse the employer or its workmen's compensation insurance carrier for any amounts paid or payable under the workmen's compensation act to date of recovery, and the balance shall forthwith be paid to the employee or his dependents or personal representative and shall be treated as an advance payment by the employer on account of any future payment of compensation benefits.

Expenses of recovery shall be the reasonable expenditures, including attorney fees, incurred in effecting such recovery. Attorney fees, unless otherwise agreed upon, shall be divided among the attorneys for the plaintiff as directed by the court. The expenses of recovery above mentioned shall be apportioned by the court between the parties as their interests appear at the time of said recovery.

Compensation benefits referred to in this section shall in each instance include but not be limited to all expenses incurred under sections 4 and 8 of part 2 of this act, being sections 412.4 and 412.8 of the Compiled Laws of 1948. C.L. of 1948, § 413.15 (Supp.1961), Mich.Stat.Ann. § 17.189 (1960).

failing to install guards where needed (in particular, on this machine), failing to advise Goodyear of this hazard and of the devices to remove or reduce such hazard, failing to refrain from expressly or impliedly representing to Goodyear that the machine could safely be operated in this condition, and failing to acquaint themselves with literature of the National Safety Council concerning the guarding of this type of machine; and that this negligence was the proximate cause of Gutowski's death. Defendant moved under Rule 12(b) (6) of the Federal Rules of Civil Procedure to dismiss the action on the ground that the complaint failed to state a claim against the defendant upon which relief can be granted, or, in the alternative, for summary judgment on the ground that there is no genuine issue as to any material fact, because it is not subject to liability as a third party tortfeasor under the Michigan Workmen's Compensation Act. Defendant contends that because, under the Act, it is primarily obligated to assume all obligations imposed upon the employer as far as the payment of compensation, death benefits, medical expenses, etc. are concerned, it shares the immunity granted the employer by the Act; and further asserts that, because it is subject to the Act and primarily obligated to assume the obligations of the employer, it is such a fundamental and necessary part of the workmen's compensation program that it cannot be regarded as a third party under the Act.

Rule 12(b) of the Federal Rules of Civil Procedure states:

"* * * If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

The words "matters outside the pleading * * * not excluded by the court" and the "material made pertinent to such a motion by Rule 56" refer to affidavits as is provided by that rule. Baltimore & O. R. R. v. American Fidelity & Cas. Co., 34 F.R.D. 148 (W.D.Pa.1963). The defendant has filed an affidavit in support of its motions which recites the pertinent terms of the insurance contract and relevant statutory provisions.

Rule 56(c) provides:

"* * * The (summary) judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. * * * *"

The allegations made in the complaint present questions of fact as to whether defendant owed a duty of providing safety inspection services to Goodyear, whether it performed that duty negligently, and whether such negligence caused the death of plaintiff's decedent. The defendant in its affidavit does not contradict the facts as alleged by the plaintiff, as these factual issues are not met if defendant is correct in its contention that on the basis of the statute it is entitled to judgment as a matter of law. Plaintiff attacks the affidavit filed by defendant on the ground that it was signed by defendant's counsel, who had no personal knowledge of, or ability to testify to, the facts therein, and thus does not comply with the requirements of section (e) of Rule 56. Section (e) provides that supporting affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." The affidavit merely recites terms of the insurance contract and certain statutory provisions. This court cannot say that defendant's attorney is without personal knowledge as to these facts or that he

could not testify thereto. However, even if the defendant's affidavit is not in accord with Rule 56(e), the court may disregard all factual information supplied by counsel for defendant in its affidavit and briefs and consider the merits and vitality of the complaint solely in the light of the arguments and authority as contained in the oral argument of the respective counsel and their briefs in support thereof. See, Baltimore & O. R. R. Co. v. American Fidelity & Cas. Co., supra. In fact, however, this is not even necessary here because at this point in the proceedings defendant is not disputing the facts alleged in the complaint and for the purposes of this motion the court shall consider these facts to be true as alleged. Thus, the question before this court is entirely one of law: Is the workman's compensation insurance carrier of the decedent's employer, who must pay the statutory benefits provided by the Michigan Workman's Compensation Act, also subject to liability under the third-party liability provision of that Act?

 The appellate courts of Michigan have not passed upon the question. In view of the fact that the problem involves interpretation of an important state statute, the court carefully considered the advisability of abstention. However, unlike many cases in which abstention has been found to be appropriate there is no federal constitutional issue which turns on the interpretation of state law, no real danger of interfering with state administration of state affairs, and no other compelling policy considerations present which warrant abstention. Thus, inasmuch as neither party has requested it and abstention would be likely to prolong the litigation, it seems desirable that the court exercise its jurisdiction. See, Hostetter v. Idlewild Bon Voyage Liquor Corp., 377 U.S. 324, 84 S.Ct. 1293, 12 L.Ed.2d 350 (1964); Meredith v. City of Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943); In re Mohammed, 327 F.2d 616 (6th Cir. 1964).

 The legal foundation upon which plaintiff's claim is based is the recognized principle that liability can arise from the negligent performance of a voluntary undertaking. One who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully. Glanzer v. Shepard, 233 N.Y. 236, 135 N.E. 275, 23 A.L.R. 1425 (1922) (Cardozo, J.); see also 38 Am.Jur., Negligence, § 17 (1941). This is the rule in Michigan. Hart v. Ludwig, 347 Mich. 559, 564, 79 N.W.2d 895 (1956); Sweet v. Ringwelski, 362 Mich. 138, 143, 106 N.W.2d 742, 90 A.L.R.2d 1434 (1961). There are now several cases in which a workmen's compensation insurance carrier has been held to be subject to liability for the negligent performance of voluntarily undertaken safety inspections. Nelson v. Union Wire Rope Corp., 31 Ill.2d 69, 199 N.E.2d 769 (1964); Mays v. Liberty Mutual Ins. Co., 323 F.2d 174 (3rd Cir. 1963); Smith v. American Employers' Ins. Co., 102 N.H. 530, 163 A.2d 564 (1960); Fabricius v. Montgomery Elevator Co., 254 Iowa 1319, 121 N.W.2d 361, 93 A.L.R.2d 591 (1963). In these cases it was assumed or concluded that the defendant had "volunteered" to perform safety inspection services, thereby creating a duty to make such inspections without negligence. However, the fact that the insurer has gratuitously undertaken to make inspections which he was not legally bound to make, does not necessarily make it a "volunteer" under Michigan law. In Pace v. Gibson, 357 Mich. 315, at page 320, 98 N.W.2d 654, at page 657 (1959), Mr. Justice Carr speaking for a unanimous court, stated, that whether a party is a volunteer depends on whether he had an interest in the performance of the work in which he undertook to assist. Justice Carr then quoted from 92 C.J.S., Volunteer, p. 1032:

> "It has been said that no definition of a volunteer can be given without qualification, since each case must be decided on its own merits. In a general sense a 'volunteer' is one who does or undertakes to do that which he is not legally or morally bound to do, *and which is not in pur-*

*suance or protection of any interest*; one who intrudes himself into matters which do not concern him. The word is more particularly defined as meaning one who enters into service of his own free will; one who gives his services without any express or implied promise of remuneration; *one who has no interest in the work, but nevertheless undertakes to assist therein;* one who merely offers his service on his own free will, as opposed to one who is conscripted. Under these definitions, a person who, although not obliged to do an act, yet has an interest in doing it, is not necessarily a volunteer."
(Emphasis added)

▇ Certainly defendant, as workmen's compensation carrier for plaintiff's employer, had an interest in inspecting the employer's factory and equipment. It manifestly is to the insurer's advantage (among other interests) to reduce the number of accidents which would give rise to liability under the workmen's compensation statute. Thus, even assuming that defendant did gratuitously undertake to perform certain inspections, it cannot be conceded that it is a "volunteer". While the fact that defendant is not technically a "volunteer" does not preclude liability here, as the doctrine of "volunteer" relates to the question of duty owing a plaintiff, it is brought out to emphasize the need for consideration of the nature of the undertaking which defendant "volunteered" to perform. It is important to remember that this undertaking is not merely any voluntary performance of services, but an integral part of the defendant's function as an insurer under the Michigan Workmen's Compensation Act.

Reading the third-party liability provision literally and out of the context of the rest of the act, and disregarding the purpose for which the act is intended, the contention of the defendant would be without merit as it obviously is neither "a natural person in the same employ" nor "the employer". However, the Michigan Supreme Court has held that "the basic rule of interpretation is to ascertain and give effect to the intention of the legislature in the enactment and amendment of the workmen's compensation law," and that proper interpretation of a statutory provision "requires that it be read in conjunction with the act as a whole." Mills v. Detroit Tuberculosis Sanitarium, 323 Mich. 200, 209, 210, 35 N.W.2d 239, 243 (1948). The court stated in this case that although it was bound by the provisions of the act as enacted, it might interpret it reasonably, in the light of the purpose underlying its enactment. Id. at 210, 35 N.W.2d at 243.

▇ The purpose of the Workmen's Compensation Act was to place the burden of compensation for losses caused by industrial injuries and deaths upon the several industries as part of the costs of production. Lahti v. Fosterling, 357 Mich. 578, 99 N.W.2d 490 (1960); Harper v. Lowe, 272 Mich. 331, 262 N.W. 260 (1935); Andrejwski v. Wolverine Coal Co., 182 Mich. 298, 148 N.W. 684 (1915). Under this act the common law theories of negligence, contributory negligence, negligence of a fellow employee, and assumption of risk were virtually done away with in return for speedy compensation to an injured employee and practically exclusive liability of the employer. Pettaway v. McConaghy, 367 Mich. 651, 116 N.W.2d 789 (1962); Smith v. Pontiac Motor Car Co., 277 Mich. 652, 270 N.W. 172 (1936). Part three, Section fifteen of the statute, as amended in 1952,[2] "reopens the door insofar as tort liability goes, where the injury for which compensation is payable was caused under circumstances creating a liability in some person other than 'a natural person in the same employ or the employer.'"

▇ It is clear from the language of this provision that the legislature did not specifically intend to exclude the employer's compensation insurer from suit

2. Public Acts of 1952, Act No. 155.

as a third-party tortfeasor. If it had so intended, it could easily have done so by the proper language. It is not clear, however, that this failure to provide a specific exclusion means that the legislature intended to include such an insurer among those amenable to suit as third-party tortfeasor. Thus, it is up to the court to interpret this provision in the context of the entire Workmen's Compensation Act, bearing in mind the purpose for which the act was passed. Legislative intent is always difficult to ascertain, especially where, as in Michigan, records of committee proceedings and floor debates are unavailable. However, there are in the act itself many indications that the Michigan Legislature, when it passed the 1952 amendment, did not contemplate that the insurer would be sued under the third party liability provision. The most important of these indicia is in the amended provision itself. The statute includes the following language:

> "If the injured employee or his dependents or personal representative does not commence such action within 1 year after the occurrence of the personal injury, then the employer or its compensation insurance carrier may, within the period of time for the commencement of actions prescribed by statute, enforce the liability of such other person in the name of that person. Not less than 30 days before the commencement of suit by any party under this section, such party shall notify, by registered mail at their last known address, the workmen's compensation commission, the injured employee, or in the event of his death, his known dependents, or personal representative or his known next of kin, his employer and the workmen's compensation insurance carrier. Any party in interest shall have a right to join in said suit.

> "Prior to the entry of judgment, either the employer or his insurance carrier or the employee or his personal representative may settle their claims as their interest shall appear and may execute releases therefor.

> "Such settlement and release by the employee shall not be a bar to action by the employer or its compensation insurance carrier to proceed against said third party for any interest or claim it might have."

As was stated by the Supreme Court of Michigan in Pettaway v. McConaghy, supra, "[i]t is noteworthy that section 15 is not for [the employee's] benefit alone." The language purports to give the workmen's compensation insurance carrier a right to sue a negligent third party or to intervene in a suit by the employee or employer against a negligent third party. If the plaintiff's position is accepted, then the insurer has a statutory right to sue itself or intervene against itself. This would be a useless formality which the Michigan Supreme Court will not allow. In Harrison v. Ford Motor Co., 370 Mich. 683, 122 N.W.2d 680 (1963), the Michigan Court held that the employer's workmen's compensation insurer could not intervene as a party plaintiff against itself as workmen's compensation insurer for the negligent third party, in spite of the fact that it was undisputably a real party in interest. The court said that the insurer could be adequately protected by a lien against any recovery by the employee for compensation paid and a credit for future payments to be made. The same thing could be done in this situation to protect the insurer against double recovery, if necessary. However, it is obvious that this provision would not have been enacted in this form had the legislature thought about the possibility of a suit against the insurer. In this aspect, the case at bar is quite different from Mays v. Liberty Mutual Ins. Co., supra, cited by plaintiff. In that case the court found that the issue of the amenability of the insurance carrier to suit as a third-party tortfeasor was "refined to the question of whether the insurance carrier is an 'employer' as that term is defined in the statute." The statute there involved contained a definition of "employer"

which did not include the insurance carrier, but by a special provision it was to include the insurance carrier, who had assumed the employer's liability, for procedural purposes. The court in Mays felt that where the Pennsylvania legislature had intended to equate the insurer with the employer, it had done so in unequivocal terms, and that its failure to do so in the definition of employer was an indication that it "did not intend to blend their jural personalities." This difference in statutory language from the Michigan Act, which has no section equating the two "for procedural purposes", in combination with the fact that the court so narrowed the issue as to exclude consideration of the act as a whole and its underlying purposes, should be borne in mind when looking at this case as authority for suing this defendant under the Michigan Act. This distinction is especially important when it is remembered that defendant here does not argue that it qualifies as an employer under the statutory definition, but rather asserts that it should be equated with and treated as an employer because of its obligations under the act. Similarly, in Nelson v. Union Wire Rope Corp., supra, the Illinois court dismissed the argument of defendant American Mutual Liability Insurance Company, that the multiple instances where the word "insurer" and that of "employer" were utilized together in the act indicated a legislative intent to equate the two and give the insurer tort immunity where it had secured payment of compensation benefits, with the statement that the insurer was not mentioned in the act's definition of employee. This statement neither meets nor sufficiently answers the argument, which is also advanced by defendant here. Defendant contends that the numerous instances which utilize the words "workmen's compensation insurer" and "employer"[3] show that it was the intention of the

3. Part I, Section 2a, C.L. of '48 § 411.2a (Supp.1961), Mich.Stat.Ann. § 17.142(1): Certain exempt employers, simply by obtaining a *valid compensation insurance policy*, may assume liability under the act, and limit their liability thereto, without any further deed on their part.
 Part II, Section 4, C.L. of '48 § 412.4 (Supp.1961), Mich.Stat.Ann. § 17.154: In the provision relating to the furnishing of medical care to an injured employer for six months, and, thereafter, for such additional six-month periods as the Workmen's Compensation Commission shall order, it is provided that "the employer or his insurer" may file objections and be heard thereon.
 Part II, Section 5, C.L. of '48 § 412.5 (Supp.1961), Mich.Stat.Ann. § 17.155: For death of an injured employee, it is provided that "the employer shall pay, or cause to be paid," certain dependency benefits. This reference can only have reference to an insurer's liability to pay such benefits, since this is the only alternative provided under the Michigan Act for the payment of benefits directly by the employer.
 This language, that, "the employer shall pay, or cause to be paid," is found in other sections, such as, Part II, Section 9, C.L. of '48 § 412.9 (Supp.1961), Mich. Stat.Ann. § 17.159: providing for payment of total incapacity compensation; and, in Part II, Section 10, C.L. of '48 § 412.10 (Supp.1961), Mich.Stat.Ann. § 17.160, providing for payment of partial incapacity compensation.
 Part II, Section 15, C.L. of '48 § 412.15 (Supp.1961), Mich.Stat.Ann. § 17.165, the notice and claim provision of the Act, provides that the statute of limitations shall not run "in favor of either said employer or his insurer," until a report of injury shall have been filed with the compensation commission.
 Part II, Section 18, C.L. of '48 § 412.18, Mich.Stat.Ann. § 17.168, upholding the validity of notice of injury given by the employee by reason of certain inaccuracies, makes its validity depend upon whether it was the intention of the employee to mislead, "and the employer, or the insurance company carrying such risks, or the commissioner of insurance, as the case may be, was in fact misled thereby."
 Part II, Section 19, C.L. of '48 § 412.19 (Supp.1961), Mich.Stat.Ann. § 17.169, where the employee, after giving notice of injury, and "from time to time thereafter during the continuance of his disability, he shall, if so requested by the employer, or the insurance company carrying such risk, or the commissioner of insurance, as the case may be, submit himself to an examination by a physician or surgeon authorized to practice medicine under the laws of the state, furnished and paid for by the employer,

Michigan Legislature by the responsibilities given to the employer and the insurance carrier, to equate the two. While this cannot be accepted as showing conclusively that the legislature intended to grant immunity, it does show, at least, that the legislature thought of the employer and his insurer as having equal responsibilities, which tends to contradict the idea of allowing a suit against the insurer as a negligent third party.

The treatment of the workmen's compensation insurance carrier by the legislature, while it does not show an affirmative intent to grant immunity, does negative an intent to hold it liable to suit as a third party.

Under the Michigan Workmen's Compensation Act the liability of the insurance carrier is primary rather than secondary. To be a workmen's compensation insurance carrier, the insurer by statutory mandate assumes all obligations imposed upon the employer by his acceptance of the Michigan workmen's compensation law as far as the payment of compensation, death benefits, or for medical or hospital care is concerned, Workmen's Compensation Act, Part IV, Section 1(e), C.L. of 1948 § 414.1(e) (Supp.1961) Mich.Stat.Ann. § 17.195(e) (1960),[4] and any attempt to vary these terms of its statutory contract of coverage or to limit its liability by pro-

---

or the insurance company carrying such risk, or the commissioner of insurance, as the case may be."

Part II, Section 22, C.L. of '48 § 412.22 Mich.Stat.Ann. § 17.172, which provides for redemption of liability, and for payment of deferred payments, commuted on the present worth at five per cent per annum, declares that "such payments shall be made by the employer or the insurance company carrying such risk, or commissioner of insurance, as the case may be."

Part III, Section 5, C.L. of '48 § 413.5, Mich.Stat.Ann. § 17.178, directing the manner and times for payment of compensation, provides that, "Every insurance carrier which transacts the business of compensation insurance and every employer who is subject to the workmen's compensation act, but who has not insured his liability, shall keep a record of all payments made under the provisions of this act and of the time and manner of making such payments and shall furnish such reports, based upon these records, to the compensation commission * * *."

Part III, Section 5a, C.L. of '48 § 413.5a, Mich.Stat.Ann. § 17.179, a provision relative to use of an employee's statement in evidence, states, that, "If the employer, insurer or any agent of either, shall take a statement from an injured employee," it may not be used in evidence unless the employee is given a copy at the time the statement is taken.

Under Part III, Section 7, C.L. of '48 § 413.7, Mich.Stat.Ann. § 17.181, a provision permitting "any party in interest" to initiate a hearing before the Commission of any dispute or controversy. It is recognized that an insurer of an employer is such a party in interest, and,

as such, the insurer may file a claim for review before the Compensation Commission, under Part III, Section 8, C.L. of '48 § 413.8, Mich.Stat.Ann. § 17.182. It may also, as the aggrieved insurer, and, in its own name, apply for leave to appeal to the Michigan Supreme Court, in the nature of certiorari, under Part III, Section 12, C.L. of '48 § 413.12, Mich.Stat. Ann. § 17.186.

Part IV, Section 6, C.L. of '48 § 414.6, Mich.Stat.Ann. § 17.198(2), relative to "show cause" proceedings against uninsured employers; and, Part IV, Section 8, C.L. of '48 § 414.8 Mich.Stat.Ann. § 17.198(4), relative to reports required from employers not exempted from insuring their compensation risk, both show the preference accorded insured employers by the legislature.

The relatively harsh provisions of Part IV, Section 9, C.L. of '48 § 414.9 (Supp. 1961) Mich.Stat.Ann. § 17.198(5), requiring insurers to file reports of policy issuances, as well as limiting endorsements as to coverage, and, Part IV, Section 10, C.L. of '48 § 414.10, Mich.Stat. Ann. § 17.198(6), relative to insurers which "repeatedly or unreasonably" fail to make prompt payment of compensation, or "repeatedly fail to make reports to the commission as provided in this act," both show the high degree of responsibility imposed by the act upon the insurer, and the legislative intent to enforce this responsibility by punitive acts.

4. § 414.1(e) That it hereby assumes all obligations imposed upon the said employer by his acceptance of the Michigan workmen's compensation law, as far as the payment of compensation, death benefits, or for medical, surgical or hospital care or medicines is concerned.

visions inconsistent with the Workmen's Compensation Act would be nullified and rendered void by Part IV, Section 3, C.L. 1948 § 414.3, Mich.Stat.Ann. § 17.197 (1960)[5]. The Michigan Supreme Court has stated that the carrier of workmen's compensation insurance is a compensated insurer who assumes and agrees to pay the debt of another without reimbursement and is one who does not occupy the same position as a noncompensated insurer whose obligation is secondary. Fidelity & Casualty Co. of New York v. Vantaggi, 300 Mich. 528, 2 N.W.2d 490 (1942). In this respect the workmen's compensation insurer in Michigan occupies a very different position than that of an insurer under the Florida statute as interpreted by the Illinois court in Nelson v. Union Wire Rope Corp., supra. The court, 199 N.E.2d at page 785, quoting from Jones v. Florida Power Corp., 72 So.2d 285 (Fla.1954), affirms this rule:

> " ' * * * "It is the liability to secure compensation which gives the employer immunity from suit as a third party tort-feasor. His immunity from suit is commensurate with his liability for securing compensation—no more and no less. * * *" ' "

The court then specifically finds, at page 786, that:

> " * * * Under the Florida act, a compensation carrier for an employer has neither the duty nor the liability to secure workmen's compensation for the employees of its insured, or for the employees of its insured's subcontractors, and thus does not possess the essential requisite for tort immunity."

5. § 414.3 Insurance contract, consistency with act; approval of company. Sec. 3. Every contract for the insurance of the compensation herein provided for, or against liability therefor, shall be deemed to be made subject to the provisions of this act, and provisions thereof inconsistent with this act shall be void. No company shall enter into any such contract for insurance, unless such company

The Florida workmen's compensation statute, in section 440.41 (Fla.Stat.Ann. § 440.41) empowers the Commission to adopt regulations to "provide for the discharge, by the carrier for such employer, of such obligations and duties of the employer in respect of such liability, imposed by this chapter on the employer", which, as Nelson comments, at page 790, is "on its face, no more than an administrative provision relating to procedure wherein the legislature has authorized the Florida Commission, *as it deems proper*, to make regulations whereby the insurer may most effectively discharge the liability 'imposed by this chapter upon the employer.'" (Emphasis added) Continuing, the court held that under the Florida Act "* * * Liability is not transferred to the insurer, but an administrative facility is provided whereby the carrier may discharge the liability of the employer. * * *" However, under the Michigan Workmen's Compensation Act the liability is, by statute, transferred to the insurer, Michigan Workmen's Compensation Act, Part IV, § 1(1) (e), supra. Whereas, the court in Nelson found that defendant did not have the duty or liability to secure workmen's compensation for the employees of its insured, such duty does devolve upon the workmen's compensation insurer in Michigan. This duty may not be varied or limited by contract between the employer and the insurer. The numerous provisions listed in footnote (3) above show that it was the intent of the legislature to equate the insurance carrier with the employer insofar as the responsibility for providing the statutory benefits to the employee is concerned. This is especially apparent in the somewhat harsh provisions applying to employers who seek to qualify and act as self-insurers.[6]

shall have been approved by the commissioner of insurance as provided by law.

6. An employer's qualification to assume a self burden, under Part IV, Section 1 First, C.L. of '48, § 414.1 (Supp.1961), Mich.Stat.Ann. § 17.195, is not only onerous, but, is subject to several disciplinary provisions of the act, such as Part IV, Section 5, C.L. of '48, § 414.5,

It is this primary, unvariable responsibility which makes the workmen's compensation insurance carrier so vital to the effectiveness of the Michigan workmen's compensation scheme, and which militates against holding the insurer liable to suit as a third-party without the express authorization of the legislature. Courts in other states whose workmen's compensation acts bear substantial resemblance to the Michigan Act have shown no reluctance to equate the insurer with the employer to give the insurer tort immunity for negligence based on the alleged malpractice of the physician provided by the insurer, for the treatment of the employee's injury. E. g., Sarber v. Aetna Life Ins. Co., 23 F.2d 434 (9th Cir. 1928); Schulz v. Standard Acc. Ins. Co., 125 F.Supp. 411 (E.D.Wash.1954); Flood v. Merchants Mutual Ins. Co., 230 Md. 373, 187 A.2d 320 (1963); Mager v. United Hospitals, 81 N.J.Super. 585, 196 A.2d 282 (1963); Hughes v. Maryland Casualty Co., 229 Mo.App. 472, 76 S.W.2d 1101 (1934).

In Flood v. Merchants Mutual Ins. Co., supra, the court, 187 A.2d at page 322, stated unequivocally that:

"It goes without saying that when the Legislature by statute authorized employers to contract with insurance companies in order to cover possible claims under Article 101 (the Maryland Workmen's Compensation Act) it intended the insurance carrier to stand in the position of the employer. This is nowhere better demonstrated than in Article 101, § 58 (when third party liable), which provides that if it is necessary for the employer or insurance company to pay benefits to an employee for injuries sustained which are due to a third party's negligence, the self-insured employer, or 'insurance company, association or the State Accident Fund,' may enforce for their own benefit the third party's liability."

Mich.Stat.Ann. § 17.198(1); Part IV, Section 6, C.L. of '48, § 414.6, Mich.Stat.Ann. § 17.198(2); Part IV, Section 7, C.L. of '48, § 414.7, Mich.Stat.Ann. § 17.-198(3); Part IV, Section 8, C.L. of '48,

The court, at page 323, decided:

"* * * That section (Article 101, § 58), as noted above, allows actions against third parties liable for the injury. It speaks of these parties as being 'some person other than the employer * * *.' Considering the employer and the insurer to be one and the same as far as the exclusiveness of the remedy is concerned, the appellant is precluded from maintaining his action under this section, since the insurer-appellee is not a third party as contemplated by § 58."

Similarly, in Hughes v. Maryland Casualty Co., supra, 76 S.W.2d at page 1104, the Court held, that:

"* * * The insurer is not a negligent third person, within the meaning of section 3309 (Mo.St.Ann. § 3309, p. 8244). Section 3325 (Mo. St.Ann. § 3325, p. 8262) provides that the liability of the employer shall be secondary and that of the insurer primary and the latter shall be directly liable to the insured employee, etc. A negligent third person, within the meaning of the act, is one upon whom no liability could be entailed under the act."

Following this reasoning, the defendant, Aetna Casualty & Surety Company, being by force of statute, directly and primarily liable to the injured employee, is not such a third party as is contemplated by the third-party liability provision. It is argued that the above cases are not applicable to the present situation inasmuch as they involve malpractice of the physician, which the employer or his insurer was obligated by the Workmen's Compensation Act to provide, whereas, the case at bar involves a safety inspection, which the carrier was not obligated to perform. This distinction is not per-

§ 414.8, Mich.Stat.Ann. § 17.198(4); and Part IV, Section 11, C.L. of '48, § 414.-11, Mich.Stat.Ann. § 17.198(7), which give a rather tortuous life to his self-insured status.

suasive. While safety inspection may not be a duty imposed by the statute, it is an integral part of the insurer's function as a compensation carrier. Besides, it is not so much what the insurance carrier is doing that makes it immune, it is the relationship of the carrier and the employer. Certainly, an employer does not lose its statutory immunity whenever it does something not required by the compensation act. If the activity of the insurer, for which it was alleged to be negligent, bore no substantial relationship to its position as the employer's workmen's compensation carrier, (e. g., if an automobile collision occurred between the employee, while driving his employer's vehicle on the employer's business, and a vehicle operated by the insurance company's employee who also happened to be acting in the course of his employment) there would be no logical reason to hold the carrier to be immune. However, where the carrier is performing an integral part of its function under the Workmen's Compensation Act, it should be immune under the same reasoning which makes it immune when performing a required activity.

To hold that the defendant who, in performance of a function, necessitated by its role as workmen's compensation insurer, may be sued under the third-party liability provision, could have a decidedly detrimental effect upon the entire compensation program as set up by the legislature. To be sure, as was said in Fabricius v. Montgomery Elevator Co., supra, it is doubtful that all insurers will leave the field. However, although the statute does not require insurers to inspect the buildings and equipment of employers, they must do so for their own protection. It would be economically foolish, as well as a waste of manpower resources, to allow accidents which could be easily prevented to occur. Certainly the insurance carrier presents an inviting target when the plaintiff is interested in circumventing the limited recoveries permitted and the immunities granted by the compensation act. However, the area of potential liability of insurance carriers is broad and by no means confined to workmen's compensation situations. While the primary obligation for matters of safety ordinarily rests with the insured, it is a fact that fire insurance or general liability insurance underwriters frequently make inspections of the premises of the insured. Thus, whenever the plaintiff considers the policy limits inadequate, or where government or charitable immunities are a bar, or where policy coverage defenses appear formidable, or where proving the insured's negligence would be difficult, as well as where the workmen's compensation benefits do not satisfy the plaintiff, he may sue the insurer for negligent failure to inspect or negligent inspection. Furthermore, it is worth noting that private insurance carriers have made a substantial contribution to industrial safety and accident prevention. See, St. Clair, The Case for Private Ins. of Workmen's Compensation, 31 Rocky Mt.L.Rev. 1 (1959); Bureau of Labor Standards, U. S. Dept. of Labor, Safety Subjects 21 (1959); National Safety Council, Accident Prevention Manual for Industrial Operations, ch. 12, 12–16 (4th ed. 1959). Ass'n. of Cas. & Sur. Cos., Better Workmen's Compensation Protection (1958); 2 Harper & James Torts 773–774. Insurance companies which engage in accident prevention work, the social desirability of which cannot be questioned, should be able to do so without incurring unlimited liability for failing to discover a hazard that some jury might [7] think ought to have been discovered. If an

7. Michigan law takes cognizance of the prejudice against insurance companies. In Holman v. Cole, 242 Mich. 402, at page 404, 218 N.W. 795, at page 796, (1928) the court stated, that "It is a fact of which we cannot but take judicial notice that, in cases where jurors obtain information that the damages as fixed by them will be paid by insurance companies, the amount thereof is usually greatly enhanced." The Michigan Insurance Code of 1956, in section 3030, C.L. of '48 § 500.3030 (Supp.1956), Mich.Stat. Ann. § 24.13030, provides that in actions brought by an injured person, the casualty insurer may not be made or

insurance company can escape tort liability altogether by not making any inspections on the premises of the insured, but may incur unlimited tort liability by making some inspections, it more than likely will decline to make any, unless required to do so by statute. The ultimate losers will be workmen and their families. The Workmen's Compensation Act is certainly concerned with better and safer working conditions, as well as adequate compensation for injuries. An insurance carrier which conducts a safety inspection program works to achieve these statutory aims, as well as to protect itself. If insurers are to be held liable in tort, as well as for workmen's compensation, every time such an inspection fails to reveal a preventable accident, it would be in effect strict liability. Such additional liability should be imposed only by the legislature and not by the court. The Workmen's Compensation Act was passed to provide for strict liability of the employer, financed by insurance. Liability of the insurer as a negligent third party, when performing an act necessary to the proper carrying out of its function under the act, does not fit into the legislative program. In five states in which the problem of tort immunity has been specifically dealt with, the compensation carrier shares the employer's immunity. These states are Indiana, New Hampshire, New Mexico, Texas and Wisconsin.[8] The Texas provision limits the carrier's immunity to activities or services undertaken by the carrier for the prevention of accidents. The New Hampshire provision, passed in June 1961, reversed the decision of the New Hampshire Supreme Court, in Smith v. American Employers' Ins. Co., supra, in which it was held that an employer's insurer could be sued as a third party tortfeasor under the New Hampshire Workmen's Compensation Act, which, incidentally, nowhere mentioned "insurance", only requiring that employers not financially able to bear damages themselves must post sufficient bond.

Fabricius v. Montgomery Elevator Co., supra, cited by plaintiff, held that in Iowa, where there is no statutory third party liability provision, a workmen's compensation insurance carrier may be sued in a common law action for negligent failure to inspect, if it has assumed the duty to perform inspection services. The case at bar might be distinguished on the point that in Michigan an action by an employee for a compensable injury caused by a third party, while a common law and not a statutory cause of action,[9] is regulated by statute. However, as was well stated by the court in Mager v. United Hospitals, supra, after discussing the applicability of the Smith and Fabricius cases to a malpractice action, "Despite these distinctions, the philosophy of these opinions would probably permit an action here, but I reject this philosophy." In Mager, the court construed the New Jersey third-party tortfeasor provision, which provides that " * * * the employer or his insurance carrier * * * can either effect a settlement with the third person or his insurance carrier or institute proceedings

---

joined as a party defendant, and that no reference whatever may be made to such insurer or to the question of carrying such insurance during the course of trial. The public policy sought to be sustained in this state by the statute and judicial decisions is that a plaintiff shall not be permitted to inject into his suit the element of insurance and thereby obtain an unjust and excessive verdict. Lieberthal v. Glens Falls Indemnity Co., 316 Mich. 37, 24 N.W.2d 547 (1948). The policy and validity of the statute was reaffirmed in Darr v. Buckley, 355 Mich. 392, 94 N.W.2d 837 (1959) in which the court held that no reference to insur-

ance could be made during the voir dire jury examination.

8. Ind.Ann.Stat. § 40–1205; N.H.Rev.Stat. Ann. §§ 281:2, 281:12; N.M.Stat.Ann. § 59–10–4(F); Texas, Vernon's Ann.Civ.St. Article 8306, § 3; Wis.Stat. § 102.03(2). See 2 Larson, Law of Workmen's Compensation, p. 160–62 (Cum.Supp.1964).

9. The 1952 change in the statute created no new cause of action and the amendment merely limited a procedural defense. Foster v. Buckner, 203 F.2d 527 (6th Cir. 1953); Muskegon Hardware & Supply Co. v. Green, 343 Mich. 340, 72 N.W.2d 52 (1955).

against the third person for the recovery of damages for the injuries." The court commented, 196 A.2d at page 285, "As this section reads, it certainly was not envisioned that the insurance carrier would be a third party, or the insurance carrier would be permitted to sue itself, an absurd result."

Similarly, it appears to me that the entire scheme of the Michigan Workmen's Compensation Act indicates a pattern of equalizing the insurance carrier and the employer, especially in the vital third party liability provision. Nothing in the Act reveals any intention on the part of the legislature to allow the insurance carrier, which is performing an integral part of its function under the Act, to be sued as a negligent third party. Although, the philosophy of some recent decisions might allow it, I think that to do so would be to contradict the basic pattern and purpose of the Act and should not be done without express legislative authorization.

Therefore, it is ordered that the defendant's Motion For A Summary Judgment should be and is hereby granted.