STARR v. SOUTHERN COTTON OIL COMPANY.

(Filed 13 May, 1914.)

1. Jurors — Challenges—Trials—Prejudice—Principal and Surety— Indemnity Company—Appeal and Error.

In an action to recover damages from a corporation for a personal injury alleged to have been by it negligently inflicted upon the plaintiff, it is reversible error for the trial judge to permit the plaintiff's attorney to ask the jurors being selected for the trial of the cause, whether any of them is employed by any indemnity company that insures against liability for a personal injury, when there is no indication or evidence that the defendant was insured against such loss, for the tendency of such question is to prejudice the jury against the defendant and unduly embarrass it upon the trial.

2. Trials — Courts — Corporations—Stockholders—Evidence—Prejudice—Irrelevant Questions—Appeal and Error.

The trial court should see that the parties litigant have a fair and impartial trial before a jury when issues of fact are presented to them, and exclude irrelevant matters that would have the tendency to prejudice either side. Therefore, in this action to recover damages against a corporation for a personal injury alleged to have been negligently inflicted on the plaintiff, it is held for reversible error that the defendant's witness was permitted by the trial judge to be cross-examined on the question of whether the stockholders in defendant corporation were citizens of the community in which the action was being tried.

APPEAL, by defendant from *Harding, J.,* at December Term, 1913, of GASTON.

This action was brought to recover damages for injuries received in operation of a cotton-seed linter, alleged to have been caused by the negligence of the defendant. Plaintiff was employed as a sweeper and cleaner of the machines in the linter room, and was injured while attempting to clean one of the linters under the direction of Will Thompson. This machine, called a linter, removes the lint from the cotton seed, after the cotton has been ginned, and the removal is accomplished by means of brushes and saws. Plaintiff's arm was caught by the saws, and it was so lacerated that it had to be amputated. He alleges these as grounds of negligence: (1) That he was required to work and operate an inherently dangerous machine, and by a dangerous and unsafe method. (2) Defendant failed to furnish him the necessary and proper appliances for the performance of the work. (3) Plaintiff was required to perform the work in the manner aforesaid without having the necessary warning, information, and instruction beforehand, as he was inexperienced. Defendant denied that it had been negligent, and alleged that plaintiff's injury was caused by his own negligence in attempting to clean the linter in a dangerous way, when a safe method had been provided. The plaintiff was permitted to ask the following questions, against the objections of the defendant: "If any member of the jury is in the employ of or connected with any insurance indemnity company that insures against liability for personal injury, will you please make it known?"

The defendant objected to the foregoing question. The court overruled the defendant's objection and stated that such question could be asked for the purpose of obtaining information upon which counsel for plaintiff might make peremptory challenge if he desired to do so, and for no other purpose. None of the jurors responded to the question, and there was no evidence offered by either side to show that the defendant had or did not have indemnity insurance. That question was asked before the impaneling of the jury.

During the course of the cross-examination of Victor L. Smith, a witness for defendant, the court permitted plaintiff to ask the following questions: "I am working for the Victor Cotton Oil Company now; I say I am now working for the Victor Oil Company; that is not one of the branches of the Southern Cotton Oil Company."

Q. I will ask you if there isn't just one big company in this country? A. No, sir.

Q. How do you know? A. Because I have worked for different companies.

Q. How many oil mills has the Southern Cotton Company got in this country—possibly fifty or one hundred? A. Possibly they have.

Q. I will ask you if you don't know that all the cotton oil business in this country is in the hands of the Southern Cotton Oil Company? A. No, sir; I don't know that. I know that the Victor Mills don't belong to it, just as I know anything else; it is a stock company.

Q. There are fifty or seventy-five companies belonging to the Southern Cotton Oil Company, isn't that true? A. There may be that many. I know the stockholders of the Victor Cotton Oil Company. I do not know the stockholders of the Southern. I do not know that the stockholders of the Southern Cotton Oil Company are not the same as the stockholders of the Victor Company. I know all right that the people I am working for are not a part of the Southern Cotton Oil Company. I will swear that the Victor Cotton Oil Company is not a part of the Southern Cotton Oil Company. I have seen the charter granted by the State to the Victor Cotton Oil Company and have seen their stock book.

Q. Don't you know companies have a distinct charter and all belong to the same company; you know the Southern Cotton Oil Company hasn't got any stockholders in Gaston County? A. No, I do not know that.

Q. Speaking about the independent mill, is the Southern Cotton Oil Company a combination of manufacturing plants? A. I don't know, sir, and have no knowledge of that at all.

It is unnecessary to set out the case so far as the exceptions relating to the question of negligence and liability therefor are concerned, as will appear from the opinion. There was a verdict in favor of the plaintiff for $2,000, and defendant appealed from the judgment thereon.

Mangum & Woltz for plaintiff.
Tillett & Guthrie for defendant.

WALKER, J., after stating the case: The court erred in permitting the questions which were asked and objected to, as above stated. They were clearly calculated to prejudice the defendant and to prevent a fair and impartial trial, which is the first and most important object in the administration of justice. The law seeks to ascertain the truth and, upon it alone, to adjudge the rights of the parties. It was entirely irrelevant to this controversy to inquire whether any of the jurors were employed by or connected with an insurance company, without admission or proof that the defendant was indemnified by such a company. The question plainly carried with it the suggestion that defendant was so insured, when there was not the slightest proof of the fact. It was not only objectionable, as calculated to prejudice the jury by the suggestiveness of the question and its implication that defendant did carry insurance of that kind, and therefore the defendant would not have to shoulder the recovery, but in its stead, some unknown and, in this case, mythical company, which stood behind it, and this without any proof to sustain the implied charge, but it placed the defendant before the jury at a great disadvantage, in that it may be that there is no such insurance, or if there is insurance, it may not be of the kind that covers this risk or liability of defendant, as in *Clark v. Bonsal,* 157 N. C., 270, or in some other respect or for some other reason it may not protect the defendant. So that the defendant is left defenseless against any such attack, which was made, not openly, but by innuendo. The fact that there was no attempt to show that there was such insurance suggests that, in this case, it did not exist, and yet the jury is permitted to act upon the hypothesis that it does exist, and will shield the defendant from any harm.

The capital vice of this kind of examination, if allowed, is that it is based upon the supposition, not always ill-founded, that a juror is prone to be more just and considerate toward his friend or associate, or one whom he knows and with whom he may be thrown in daily contact, and towards whom he entertains a more friendly disposition, than towards a mere stranger. Somehow, we instinctively lean that way, it is thought; whereas a jury should be free from any such influence or bias, in order that they may execute justice and maintain the truth, and not be swerved by any such consideration from giving a fair and impartial verdict. While our juries are required by statute to be men of good moral character and of sufficient intelligence to properly discharge their important duties, they are not expected to be superhuman and always to successfully resist the appeals to the weaker side of their nature. The law provides against this contingency by excluding from the case all extraneous matter calculated, whether intended or not, to sway prejudicially the minds of the jurors and thus frustrate the very purpose of all trials. It is true that this Court held in *Featherstone v. Cotton Mills,* 159 N. C., 429, that the question was properly asked the jurors, if they were employees of a particular indemnity insurance company mentioned in that case, towit, the Maryland Casualty Company, but it was shown, as a foundation for the question, that the defendant, in fact, had a policy of insurance in that company which indemnified and protected it to the amount of $5,000. The same question was allowed to be asked of the jurors in the case of *Norris v. Cotton Mills,* 154 N. C., 480; but in that case also the evidence showed that the defendant had indemnity insurance in the Maryland Casualty Company, and the jurors were asked the specific question if any of them were employees of that company. In *Lytton v. Manufacturing Co.,* 157 N. C., 332, a new trial was granted, in the defendant's appeal, on the ground that evidence was admitted to the effect that the defendant had employer's liability insurance. The Court said: "In addition to the incompetency of Little's declarations as mere hearsay, the subject-matter of the declaration is universally held to be incompetent and discon-

nected with the inquiry before the court. Evidence that the defendant in an action for damages arising from an injury is insured in a casualty company is entirely foreign to the issues raised by the pleadings, and is incompetent. By some courts it is held to be so dangerous as to justify another trial, even when the trial judge strikes it from the record," citing numerous cases.

In the recent case of *Walters v. Lumber Co., ante,* 388, we approved a ruling by which plaintiff was permitted to ask a juror if he had any business connection with the Fidelity and Casualty Company, which had insured defendant against losses, including the one then being investigated. But it will be seen that in *Walters' case,* and in the others where a similar ruling was made, it was either proved or admitted that there was such insurance, and it thus enabled the plaintiff more wisely and discreetly to exercise his right of challenge. But how does that reason apply to this case? Not at all. So far as the record discloses, if a juror had any interest in or business connection with an indemnity company, it could not have affected his attitude towards the plaintiff or prejudiced him in any way, and it could not have done so, of course, unless it had been shown that the particular indemnity company had insured the defendant against ultimate liability for the plaintiff's claim of damages. The vital fact is missing in this case, and we are left with nothing else than something which is only calculated to bias the jury against the defendant, and perhaps to seriously prejudice it, if it should turn out that there is, in fact, no such insurance, and we must assume, in the absence of evidence to the contrary, that defendant is not so indemnified.

In *Walters v. Lumber Co., supra,* we referred to the well considered case of *Akin v. Lee,* 206 N. Y., 20, where the Court of Appeals of New York decided a question similar to the one now presented to us. It said, by *Justice Gray:* "If we admit a doubt as to the first ruling, the error in the second is too serious to be disregarded. We have but recently held, following a rule already laid down by us, that evidence that the defendant, in an action for negligence, is insured in a casualty company is in-

competent, and its admission-justifies an order for a new trial of the action. (See *Simpson v. Foundation Co.*, 201 N. Y., 479, 490). Such evidence, almost always, is quite unnecessary to the plaintiff's case, and its effect cannot but be highly dangerous to the defendant's, for it conveys the insidious suggestion to the jurors that the amount of their verdict for the plaintiff is immaterial to the defendant. It was a highly improper attempt on the plaintiff's part to inject a foreign element of fact into his case, which might affect the jurors' minds, if in doubt upon the merits, by the consideration that the judgment would be paid by an insurance company. While frequently, in the exercise of the authority conferred upon this Court, we disregard technical errors, when we see that they do not affect the merits of the controversy, the error committed in this case is of too grave a nature to be put aside as merely technical. In repeated instances judgments have been reversed for its commission, and counsel must take notice that we shall adhere to our rule and that we shall order a new trial in all cases where, in such actions, a verdict may have been influenced by the consideration of such unauthorized evidence." Our case is stronger than that one, for there the defendant was actually insured, though the indemnity company was not a party to the record, and the question was not asked for the purpose of intelligently exercising the right of challenge. In this case the question was totally irrelevant, and was so injurious in its tendency to embarrass defendant that we cannot overlook it or venture to say that it caused no prejudice. If a juror had a business relation with an insurance company, that had no connection whatever with the defendant, how could his sitting in the box harm the plaintiff? But the covert suggestion that defendant was insured, without any proof of it, could have but one effect, and that is to prejudice it before the jury, for the reasons we have already stated. In *Haigh v. Edelmeyer*, 107 N. Y. Suppl. at p. 939, the Court said, when discussing a question somewhat analogous to ours, though not presenting as strong a case for defendant: "The plaintiff's counsel, repeatedly and persistently, without rebuke from the Court, brought before the jury the fact that

165—38

the defense was being conducted by an insurance company. This fact was not relevant to any issue in the case, and could have been emphasized for no other purpose than to give plaintiff an unfair advantage before the jury. This practice has been repeatedly condemned by this Court and the Court of Appeals, and in the present case was carried to an extent which would have necessitated a reversal of the judgment, even if the record had presented no other reversible error."

There is another view that should not be overlooked. If plaintiff gets any advantage before the jury by the impression made on it that defendant is insured, and thereby a verdict, as to negligence, is secured, or the damages are increased, upon the theory that an insurance company will have to pay them, and defendant is not insured, the plaintiff has profited by something which the jury supposed to be harmless to defendant, when in fact a greater wrong has been done it than if the suggestion that it was insured had not been made, for it may have to pay for a negligence which did not occur, and much larger damages than would otherwise have been recovered. It would have to respond to a verdict, obtained upon the really false assumption that it is insured, and not based solely upon its own just claim to fair consideration by the jury. This should not be. It would cast reproach upon judicial procedure, and produce untold harm in fostering the sentiment that cases are not decided upon their own real merits.

We do not, for a moment, impute any wrong motive to the plaintiff, nor is it necessary to do so. The question is not what plaintiff intended, but what condition has been created by his act. It is the effect, and not the motive, that we must regard.

Added to the serious question which we have discussed is the injury to the defendant from the cross-examination of the witness Victor L. Smith. How could it do otherwise than prejudice the defendant to inquire whether it had any stockholders in Gaston County, or whether defendant is in a combination or trust? It was not relevant to any phase of the case or any question involved in it, which concerned the defendant's liability. The implied suggestion is, that no resident of Gaston County

will be harmed by a full verdict for the plaintiff, and a non-resident is entitled to less consideration than a resident. This method of examination—and the other questions are virtually of the same sort—ought not to be allowed. Courts should be very careful to safeguard the rights of litigants and to be as nearly sure as possible that each party shall stand before the jury on equal terms with his adversary, and not be hampered in the prosecution or defense of his cause, by extraneous considerations, which militate against a fair hearing. *Hensley v. Furniture Co.,* 164 N. C., 148. The error in this case consists in the fact that the court did not forbid the examination to be so conducted, and caution the jury against its evil influence, as suggested in the *Hensley case,* but expressly permitted it, and this was clearly detrimental to defendant.

There are serious questions raised as to the rulings of the court upon the merits, the issues of negligence and contributory negligence, but in the view already taken of the case, they need not be considered.

We are of the opinion there should be another trial, for the reasons stated.

New trial.