HOLMAN *v.* COLE.

1. EVIDENCE—JUDICIAL NOTICE—INSURANCE.
   The court will take judicial notice that, in cases where jurors obtain information that the damages as fixed by them will be paid by insurance companies, the amount thereof is usually greatly enhanced.

2. APPEAL AND ERROR—MISCARRIAGE OF JUSTICE—REVERSIBLE ERROR WHERE VERDICT ENHANCED BY KNOWLEDGE THAT DEFENDANT WAS INSURED.
   In view of 3 Comp. Laws 1915, § 14565, providing that judgment should not be set aside because of error unless miscarriage of justice resulted therefrom, the Supreme Court will not reverse a case because of error in getting before the jury the fact that defendant carried insurance, unless it appears that the verdict was affected or the amount thereof enhanced thereby; the test being whether plaintiff's counsel, in getting said fact before the jury, acted in good faith and without intention to secure advantage to his client.

3. SAME—EXCESSIVE VERDICT—DAMAGES—VERDICT INFLUENCED BY KNOWLEDGE OF JURY THAT DEFENDANT CARRIED INSURANCE.
   In an action under the survival act for the death of a six-year old boy, a verdict for $12,708.33, after being reduced to present worth, is so excessive as to warrant the inference that the jury were influenced by the knowledge that defendant was protected by insurance.

4. SAME—TRIAL—VOIR DIRE EXAMINATION—REVERSIBLE ERROR.
   In an action under the survival act for the death of a six-year old boy, it was reversible error to permit plaintiff's counsel to ask each juryman on his *voir dire* examination whether he was interested as a stockholder in a certain insurance company, a foreign corporation, from which they might infer that defendant was insured, in view of the fact that the verdict returned was excessive.

---

¹Evidence, 23 C. J. § 1810; ²Appeal and Error, 4 C. J. § 2938; ⁸Id., 4 C. J. § 2939; ⁴Id., 4 C. J. § 2932; Juries, 35 C. J. § 439.

5. TRIAL—PURPOSE OF SUBMITTING SPECIAL QUESTIONS.

> The purpose of submitting special questions to the jury, as provided for·in 3 Comp. Laws 1915, § 12611, is to enable the court to know what view the jury takes of material issues, and to correct their possibly·wrong inferences from the facts which they find to exist.

6. SAME—SPECIAL QUESTION SHOULD BE ANSWERED AS JURY FIND FACT TO BE WITHOUT INSTRUCTIONS.

> When a proper special question is submitted, it should be answered as the jury find the fact to be and they should not be instructed as to what effect their answer will have on the general verdict they have announced, or on which they may later agree.

7. SAME—INSTRUCTIONS ON SPECIAL QUESTIONS.

> Where the jury returned a general verdict for plaintiff, but reported that they were unable to answer the special questions submitted, the court was in error in instructing them, in effect, to answer the questions in conformity with their verdict.

Error to Houghton; Stone (John G.), J.     Submitted January 10, 1928.     (Docket No. 106.)     Decided April 3, 1928.

Case by Earl B. Holman, administrator of the estate of Earl B. Holman, Jr., deceased, against William C. Cole for the negligent killing of plaintiff's decedent. Judgment for plaintiff.     Defendant brings error.     Reversed.

*M J. Doyle* and *Derham & Derham* (*Bulkley, More, Poynton & Overmyer,* for appellant.

*B. H. T. Burritt,* for appellee.

SHARPE, J.     This action was brought under the survival act by plaintiff as administrator of the estate of his deceased son, a boy six years old, to recover the damages incident to his injury and death.     On

---

[5]Trial, 38 Cyc. p. 1907; [6]Id., 38 Cyc. p. 1775.

August 14, 1926, the deceased was sitting in his father's car, not then in motion, on the side of the road. The defendant was driving his car from the opposite direction, and, when near the car in which the deceased was sitting, it swerved and struck the other car, causing injuries to the deceased from which he died about 24 hours thereafter. He had verdict and judgment for $12,708.33. Defendant seeks review by writ of error.

1. Counsel for the plaintiff was permitted to ask each juryman on his *voir dire* examination the following question:

"Are you in any way interested as a stockholder or otherwise in the New Amsterdam Casualty Company?"

In overruling defendant's objection the court said:

"You are aware that the Supreme Court has held in two or three cases that this is a proper question to ask if it is not pursued any further."

It is a fact of which we cannot but take judicial notice that, in cases where jurors obtain information that the damages as fixed by them will be paid by insurance companies, the amount thereof is usually greatly enhanced. We have here a verdict for more than $12,000, allowed in most part for loss of future earnings. There is little in the record to indicate that any considerable amount of this was allowed for pain and suffering. Had he lived, it would have been 15 years before he would have begun to earn anything for himself. The court very properly instructed the jury that their allowances for losses of future earnings "are to be reduced by you to their present worth." Without entering into a computation, it is apparent that, if this instruction was followed, the allowance before reduction would have been a sum in excess of $20,000. Contrasting the verdict with that allowed by juries in many cases where the defendants are individuals, we cannot but infer that the amount of this

verdict was largely increased by the information conveyed to the jury by the questions asked.

We have examined the cases relied on by the court and by counsel for plaintiff to sustain the statement that this court has held that a similar question to that asked is a proper one. We cannot so find.

The statute (3 Comp. Laws 1915, § 14565) provides:

"No judgment or verdict shall be set aside or reversed, * * * unless, * * * it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice."

In our efforts to comply therewith, we have frequently held that unless it appears that the verdict was affected by consideration of the fact that defendant was protected by insurance, or that the amount allowed was enhanced thereby, reversal will not be had. The test which we think should be applied is, Was plaintiff's counsel acting in good faith and without intention to secure advantage to his client in injecting into the case the fact that defendant was carrying insurance?

In *Link* v. *Fahey*, 200 Mich. 308, it was said: "The record is barren of anything tending to show that the inquiry was prosecuted in bad faith." In *Ward* v. *De Young*, 210 Mich. 67, we were "unable to say that plaintiff's counsel was intentionally seeking to get the fact that such insurance was carried before the jury." In *Church* v. *Stoldt*, 215 Mich. 469, 479, it was said: "We are not satisfied that the questions complained of were not asked in good faith to enable plaintiff's counsel to intelligently exercise his right of peremptory challenge." In *Morris* v. *Montgomery*, 229 Mich. 509, 512, it was said that "the rule of exclusion" of such questions "ought not to be employed to set aside judgments except in cases of flagrant violation." In *Greenwold* v. *Faber*, 234 Mich. 217, the court said: "It cannot be said that plaintiff's counsel deliberately

brought this subject into the case for the purpose of prejudicing the jury." In *Sutzer* v. *Allen,* 236 Mich. 1, the fact that defendant was insured appeared in a statement made by him. The verdict was but $1,500. Reversal was denied because it did not appear that improper use was made of the fact of the insurance "thereby increasing the size of the verdict." The holding of Chief Justice BIRD in that case was quoted with approval in *Oliver* v. *Ashworth,* 239 Mich. 53, 56. No claim was made that the verdict was excessive. In all of these cases the ruling hinged upon the purpose which actuated counsel; upon his good faith. In *Grubaugh* v. *Simon J. Murphy Co.,* 209 Mich. 551, 564, Mr. Justice BROOKE, speaking for a majority of the Justices sitting, said:

"I am of the opinion that the colloquy set out in the opinion of the Chief Justice, between counsel for plaintiff, counsel for defendant, and the court, was in bad faith, deliberately designed to advise the jury of the fact that the real defendant was an insurance company, and not the defendant named in the pleadings. In this jurisdiction, cases are not infrequent where counsel, aware of the fact that juries are prone to be more liberal with the funds of insurance companies than with those of private individuals, have successfully sought to place before the jury the fact that the nominal defendant was insured, and therefore would not suffer by the rendition of a substantial or excessive verdict. This practice has met with the consistent disapproval of this court, as will be fully demonstrated by an examination of the authorities cited by my Brother MOORE on this branch of the case."

In most of the cases above referred to, the inquiry was made as to the juror holding stock in a mutual company. In the case before us, the inquiry referred to a foreign corporation. We feel forced to the conclusion that the purpose of counsel in asking each one of the jurors called if he was interested as a stockholder in such company was not for the purpose of

obtaining information, but to impress upon their minds that the defendant was protected by insurance and would not be personally liable for any judgment entered in the case. If information alone was sought, it might easily have been obtained by asking the jury collectively if any of them were stockholders in any corporation, and, if they were, to have asked the kind of a corporation they were interested in. This method of avoiding prejudice was suggested in *Simpson v. Foundation Co.*, 201 N. Y. 479, 490 (95 N. E. 10, Ann. Cas. 1912B, 321). In *Rice v. Hotel Co.*, 187 Ill. App. 317, plaintiff's counsel asked certain jurors, "Do you know any one connected with the Ætna Insurance Company?" This was held to be reversible error. It was said, "The harm was done when the improper questions were asked." The following cases cited and quoted from in defendant's brief may be read with profit: *Simpson v. Foundation Co., supra; Hoyt v. J. E. Davis Manfg. Co.*, 98 N. Y. Supp. 1031; *Mithen v. Jeffery*, 259 Ill. 372 (102 N. E. 778); *Starr v. Southern Cotton Oil Co.*, 165 N. C. 587 (81 S. E. 776); *Pierce v. United Gas and Electric Co.*, 161 Cal. 176 (118 Pac. 700); *Putnam v. Pacific Monthly Co.*, 68 Or. 36 (130 Pac. 986, 136 Pac. 835, 45 L. R. A. [N. S.] 338, Ann. Cas. 1915C, 256); *Stratton v. Nichols Lumber Co.*, 39 Wash. 323 (81 Pac. 831, 109 Am. St. Rep. 881); *Rice v. Hotel Co., supra; Percell v. Degenhardt*, 202 Ill. App. 611.

In view of the amount of the verdict, we feel constrained to hold that reversible error was committed.

2. The following special questions were submitted to the jury at the request of defendant's counsel:

"(1) Was the loose gravel which William C. Cole's car struck the sole proximate cause of the accident?

"(2) Did William C. Cole, the defendant, neglect to do anything which an ordinarily prudent man would have done under like circumstances?"

The jury were instructed that they must answer them "Yes" or "No." On their return into court the foreman announced:

"We find the defendant guilty of negligence and assess the damages at $12,708.33. The jury is not able to answer the questions on this sheet. These special questions that were asked."

The following then occurred:

"*The Court:* You say you have not answered the questions? They must be answered as I instructed you. They must be answered. Your verdict is not complete unless these questions are answered.

"*The Jury:* We don't understand the second question.

"*The Court:* The second question is: Did William C. Cole, the defendant, neglect to do anything which an ordinarily prudent man would have done under like circumstances? If you find him guilty of ordinary negligence he therefore did not do what an ordinarily prudent person would have done under like circumstances. If you mean by your verdict that he is guilty that question is answered 'Yes'—that he did neglect to do what an ordinarily prudent man would have done. If you find that he has done what an ordinarily prudent man would have done under like circumstances, then your answer would be 'No.'

"In law that means simply this—the definition of ordinary negligence is the failure to do what an ordinarily prudent man would have or should have done under all the facts and circumstances of the case. So that if you say he is guilty you would answer the question 'Yes'—that he did neglect to do what an ordinarily prudent man would have done.

"*The Jury:* Would that affect our other verdict in any way?

"*The Court:* You will have to answer that, gentlemen, as your own judgments determine under my instuctions. If you find him guilty, why it follows that he did not do what an ordinarily prudent man would have done under like circumstances, and your answer would be 'Yes,' he did neglect to do what an ordinarily prudent man would have done. If you find him not guilty then it follows that he did do what an ordinarily

prudent man would have done under like circumstances."

They later returned and announced the verdict as above stated and answered the first question "No," and the second "Yes."

Section 12611, 3 Comp. Laws 1915, provides for the submission of such questions. They control the general verdict.

"Their purpose is to enable the court to know what view the jury take of the material issues, and to correct their possibly wrong inferences from the facts which they find to exist." *Cole* v. *Boyd*, 47 Mich. 98.

No objection was made to the form of the questions when submitted.

"The object of the statute in allowing such specific questions to be submitted to the jury, and requiring them to make answer thereto, was to ascertain whether the jury had, in making up their general verdict, properly applied the law, as given by the court, to the facts in the case. This can never be done if the jury are to be directed by the court what answer shall be made to each question asked, in the event the general verdict is a certain way." *Beecher* v. *Galvin*, 71 Mich. 391, 396.

In the instructions given relative to the special questions when the jury came into court and announced a verdict for plaintiff, the trial judge coupled up the answers which they should give with the conclusion they had reached as to plaintiff's right to recover. They were told that if they meant by their verdict that defendant was guilty of negligence, it would follow that he had neglected to do what an ordinarily prudent man would have done under like circumstances. In effect, he said to them that, unless they changed their general verdict, the second question should be answered in the affirmative. When a proper question is submitted, it should be answered as the jury find the fact to be. They should not be in-

structed what effect their answer will have on the general verdict they have announced, or on which they may later agree.    We are impressed that they might have understood from what the court said to them that if they desired their general verdict to stand they must answer the second question in the affirmative.    Were this the only error complained of, we should, however, be loath to reverse because of it.

3. In our opinion, there was sufficient evidence of defendant's negligence to justify the submission of that question to the jury.

The judgment is reversed, with costs to appellant, and a new trial ordered.

NORTH, FELLOWS, WIEST, CLARK, and MCDONALD, JJ., concurred.

The late Chief Justice FLANNIGAN did not sit.

The late Justice BIRD took no part in this decision.