## STATE v. WILLIAM R. MILLER AND HOUSTON L. WILSON.

(Filed 1 November, 1967.)

**1. Burglary and Unlawful Breakings § 5; Indictment and Warrant § 17—**

There is a fatal variance between pleading and proof where the indictment alleges the felonious breaking and entering of a building "occupied by one Friedman's Jewelry, a corporation", and the evidence is that the building is occupied by "Friedman's Lakewood, Incorporated" and that there are three "Friedman's" stores in the city where the offense took place, and it was error to deny defendants' motions of nonsuit at the close of all the evidence.

**2. Criminal Law § 26—**

Prosecution on an indictment charging the felonious breaking and entering of a building "occupied by one Friedman's Jewelry, a corporation" will not bar a subsequent prosecution on an indictment charging the felonious breaking and entering of a building occupied by "Friedman's Lakewood, Incorporated."

**3. Larceny § 7; Indictment and Warrant § 17—**

There is no fatal variance where the indictment charges the felonious larceny of rings, the property of "Friedman's Jewelry, a corporation", and

the undisputed evidence is that the rings were the property of "Friedman's Jewelry, Incorporated", it appearing that, in respect to the ownership of the rings stolen, the witnesses were referring to one and the same corporation.

**4. Criminal Law § 104—**

When the State has introduced no exculpatory evidence, defendant's evidence tending to exculpate him of the offense charged is to be disregarded on motion of nonsuit.

**5. Larceny §§ 5, 7—    Evidence held sufficient to raise presumption of defendants' guilt of larceny.**

Evidence of the State. that a store was broken into and that a quantity of rings was taken therefrom, and that some few minutes later the defendants were seen traveling at a rapid rate of speed some three or four miles from the scene of the crime, and that as a police car was giving pursuit a pillowcase containing the stolen rings was thrown from the defendant's car, *held* sufficient to raise a presumption that the defendants were guilty of the larceny, and defendants' motion for nonsuit was properly denied.

**6. Criminal Law § 102—**

Wide latitude is allowed counsel in their arguments to the jury, and, except in capital cases, an exception to improper remarks of counsel during the argument must ordinarily be taken before verdict.

**7. Same—**

In a prosecution for felonious breaking and entering and for larceny, statements of the solicitor in his argument to the jury to the effect that the defendants were habitual storebreakers are prejudicial, the defendants not having testified in their own behalf nor having introduced any evidence as to their reputation or character.

**8. Same—**

A statement by the solicitor in his argument to the jury that, in order to arrive at a verdict of not guilty, "you must be able to accept the proposition that people lie", is prejudicial, since it excludes the possibility that conflicting evidence in a case may be due to mistake or other factors.

**9. Same—**

A remark of the solicitor uncomplimentary to defendant's counsel, while not so prejudicial as to warrant a new trial, was expressly disapproved by the Supreme Court in this case as violative of professional ethics proscribing derogatory attacks upon opposing counsel.

**10. Same—**

A statement by the solicitor in his argument to the jury that he knew a witness for the defendant "was lying the minute he said that", *held* improper.

**11. Same—**

An improper argument to the jury ordinarily may be corrected either at the time it is made or at the time the court charges the jury; yet, where the argument is grossly unfair and calculated to mislead and to prejudice the jury, it is the duty of the court, whether or not objection

is entered, to intervene at once in order to restrain the improper argument.

**12. Criminal Law § 146—**

The Supreme Court, in the exercise of its supervisory jurisdiction, may order a new trial for the failure of the trial court to restrain a grossly prejudicial argument by the solicitor, even though counsel for defendant failed to object to the remarks at the time they were made.

APPEAL by defendants from *Clarkson, J.,* 3 April 1967 Regular Criminal Session of MECKLENBURG.

Criminal prosecution upon an indictment containing two counts: The first count charges defendants William R. Miller and Houston L. Wilson on 5 January 1967 with the felonious breaking and entry into a building occupied by one Friedman's Jewelry, a corporation, with intent to commit the felonious and infamous crime of larceny, a violation of G.S. 14-54; the second count in the indictment charges the same defendants on the same date in the same place with the felonious larceny of 4 white-gold men's diamond rings, 8 yellow-gold men's diamond rings, 9 white-gold ladies' wedding sets, 3 yellow-gold ladies' wedding sets, 1 ladies' white-gold dinner ring, 2 white-gold ladies' and gentlemen's wedding sets, 3 yellow-gold princess rings, 3 white-gold princess rings, 2 white-gold men's Sapphire rings, 1 Masonic ring, 1 white-gold Sapphire and 1 cocktail ring of the value of more than $200, the property of Friedman's Jewelry, a corporation, of the value of $4,500.

The defendants, who were represented in court by their attorneys, entered pleas of not guilty. Verdict: Guilty on both counts as to both defendants.

From a judgment of imprisonment as to each defendant on both counts in the indictment to run consecutively, both defendants appeal.

*Attorney General T. W. Bruton, Assistant Attorney General William W. Melvin, and Staff Attorney T. Buie Costen for the State.*

*Sanders, Walker & London by James E. Walker and Arnold M. Stone for defendant-appellant Miller.*

*Morrow, Cutter and Collier by John H. Cutter for defendant-appellant Wilson.*

PARKER, C.J. The State began its case against the defendants with evidence offered by Robert E. Beach who testified that his employer, a business engaged in burglar, fire and holdup protection known as the A-D-T Protection Service, installed and maintained a burglar alarm system in the building occupied by "Friedman's Jewelry Company on Pineville Road." He stated that this system worked on an electrical principle so that when a certain foil around the window is broken the A-D-T Protection Service will receive an alarm on tape down at its office. He further testified that at 1:07 a.m. on 5 January 1967 the Friedman's Jewelry alarm system went off and that he conveyed this information, *via* a direct telephone line, to a dispatcher in the Charlotte Police Department and thereafter telephoned Jerry Mountain, the manager of "Friedman's Jewelry," notifying him of the break-in.

Mr. Mountain testified in substance as follows: He is the manager of "Friedman's Jewelry Store at the K-Mart Plaza Shopping Center on Pineville Road." The merchandise which is offered for sale to the general public is the property of "Friedman's Jewelry, Incorporated." After receiving the call informing him of the break-in, he left his home and went to the store where he arrived about 1:25 or 1:30 a.m. and found two patrol cars and an A-D-T man. The entire front diamond window was broken through and glass was lying on the sidewalk. He had put a new display in the window the day before and had taken an inventory; and, by subtracting the portion which remained, he was able to ascertain that 75% of the diamonds were gone from the showcase. At this point in his testimony, the solicitor requested Mountain to examine individually certain objects contained in a pillowcase. Thereupon he testified that he had seen the objects before; that they were the display boxes he used for diamonds and a display stand all of which are the property of "Friedman's Jewelry, Incorporated." The solicitor then produced another object which the witness identified as a display unit manufactured at the jewelry company's home office. He stated that there are only three of them in Charlotte, one at each of the "Friedman's Jewelers." He further testified that he did not know defendants Wilson and Miller; that neither had been employed at the store to his knowledge; and that neither had his permission to take anything out of the store. The solicitor then handed Mountain a paper envelope and asked him to pour its contents out in front of him and examine each item. After having done so, he stated that the articles consisted of a quantity of men's diamonds, ladies' wedding sets, princess rings, cocktail rings, wedding bands, sapphire rings, and matching wedding bands. He identified them as the property of "Friedman's Jewelry" by the letters H-D inscribed in the band,

which is a mark peculiar to the Friedman's Jewelry chain. He stated that he has been in the jewelry business for two years, and, in his opinion, the reasonable market value of the stolen rings is between four and five thousand dollars. During the course of his testimony, the witness stated that each of the items examined and identified by him were in the showcase window of the store at six o'clock, closing time, on 4 January 1967 but that they were not there when he returned to the premises around 1:30 a.m. on 5 January 1967.

On cross-examination Mountain testified in essence that there are three Friedman's stores in Charlotte each of which is a separate corporation; that the name of this particular corporation the business premises of which were unlawfully broken into and entered is "Friedman's Lakewood, Incorporated"; that all the merchandise in the store is owned by "Friedman's Jewelry, Incorporated," the home office of which is located in Augusta, Georgia; and that he does not know if "Friedman's Jewelry, Incorporated" owns all the stock in "Friedman's Lakewood, Incorporated."

The pertinent portions of the remainder of the State's evidence tended to show the following:

Officers K. E. Smith and L. A. McCoy, members of the Charlotte police department assigned to the patrol division, were each alone operating their respective police cruisers in their separate areas of the city of Charlotte on the morning of 5 January 1967 when they each received the radio communication from the police department's dispatcher that "Friedman's Jewelers" had been broken into. Shortly thereafter and at approximately 1:15 a.m., officer Smith saw a black 1961 Ford headed north on Park Road. He was headed south on the same road. Immediately upon observing the car he went to the nearest crossover and proceeded after it. He saw three people inside the car. Officer Smith then radioed ahead to officer McCoy, who was some distance to the north of him in the Park Road area, telling him that a black Ford was proceeding into town on Park Road, that he should be on the lookout for it, and that it should be approaching Senaca about this time. Smith was then two or three blocks behind the suspect car trying to catch up. Officer McCoy first observed the car as it was headed north coming through the intersection of Senaca and Park Road approaching him at which time he was at the intersection of Mockingbird Lane and Park Road. He waited there for the car to pass him and as it did he pulled out behind it thus coming between the black Ford and officer Smith's patrol car. McCoy never let the Ford get more than 100 or 200 feet away from him. McCoy testified that he was familiar with the building that faces Park Road

STATE v. MILLER.

known as the Hamilton House, and when he first saw the Ford it was already north of the Hamilton House. After McCoy had traveled approximately half a block someone on the right-hand side of the car threw a pillowcase out of the right-hand side of the car. It struck the pavement and the grass on the easterly side of the road and sprayed the contents all over the ground. After he saw the pillowcase thrown from the car, McCoy radioed back to Smith, who was still in pursuit also, and advised him of the location at which it had been ejected and asked him to mark the spot. Thereupon, McCoy turned on his red light and the Ford turned a corner and stopped between 1:15 and 1:20 a.m. The driver of the automobile was Jerry Stutts. Defendant Miller was seated in the center of the front seat, and defendant Wilson was seated on the right-hand side of the front seat.

Meanwhile, officer Smith arrived in his patrol car. Thereupon, officer McCoy went back to the area where the objects had been discharged from the vehicle, and he found the white pillowcase, the jewelry cases, and the assortment of rings which had spilled out of the pillowcase and which were scattered all about on the ground. All of these items were offered into evidence and the jewelry boxes, rings, etc., were identified by witness Mountain as having been in the jewelry store showcase window on the afternoon prior to the break-in. These objects were out of McCoy's sight for maybe three or four minutes from the time they were thrown out of the car.

There are two available routes over which an automobile can be driven from the jewelry store to the Hamilton House on Park Road. During the course of his investigation of this case, officer Mc-Coy drove his police car over both these routes; and, in his opinion, the distance between these two points by either course is somewhere between three and four miles and, hence, roughly the same.

McCoy testified on cross-examination that when the Ford passed him it was headed toward town and traveling about forty-five to fifty miles per hour.

In his testimony, officer Smith stated that he "arrested Mr. Stutts for driving under the influence." He said that he observed him walk and that in his opinion Stutts was under the influence of an alcoholic beverage or a narcotic drug on that occasion. Officer Smith told about finding the small "plastic object" or "stand" lying against Miller's leg on the seat between Miller and Stutts. This object was introduced into evidence. Smith then testified that he observed a "long, oblong sort of roundish stain on the front of" defendant Wilson's sweater. He stated that the color of the stain was red.

After the State had rested its case, defendant Wilson offered the evidence of Jerry Stutts, Jo Nell Guest, and Helen Godfrey.

On direct examination Stutts testified in substance as follows: Early on the morning of 5 January 1967 he drove out to Friedman's Jewelry and parked his car behind it. He took a tire tool from the trunk of his car, walked around to the front of the building, broke the showcase window out, and grabbed all the jewelry he could reach without crawling through the window. He put this jewelry in a pillowcase which he placed on the back seat of his car and then drove away. He broke into and entered the jewelry store alone and has been tried and convicted for it. After stealing the diamonds he went to Park Road to the Hamilton House apartments. Earlier in the evening he had talked with Jo Nell Guest over the telephone at which time he had told her to have defendant Miller meet him at the Hamilton House apartments as soon as possible. He made the telephone call from a pool room at about 12:30 a.m. He then left the pool room and drove to Friedman's Jewelry where he committed the acts specified above. Stutts identified the various items offered into evidence by the State as having been the articles which he removed from the jewelry store's showcase window. After leaving Friedman's Jewelry, he went to the Hamilton House where the defendants and two girls, Jo Nell Guest and Helen Godfrey, were sitting in a car waiting for him. When he pulled up, defendants got out of the girl's car and came around and got in his car. Thereafter he drove up the street a few blocks from the Hamilton House, and the police pulled in behind him. He told defendant Wilson to reach in the back seat, get the bag, and throw it out. Wilson did so and shortly thereafter the police pulled the car over and arrested Stutts for drunk driving. He called defendant Miller that evening because he wanted Miller to show him where someone lived that would "fence" the jewelry. He did not know when he telephoned Jo Nell Guest that defendant Wilson was with Miller and the girls that evening. After the defendants got in his car, he did not have time to tell them what he had done because the police fell in after him just as he left the Hamilton House.

On cross-examination Stutts testified in substance as follows: He is not serving time for breaking into Friedman's Jewelry, but instead is serving a sentence for breaking and entering and stealing property from another building in the city of Charlotte. He was convicted in January of 1967 for storebreaking and larceny at three separate places in the city of Charlotte. He had been tried and convicted of storebreaking, larceny, assault, speeding and running stop signs before that. In one hand, on the occasion in question, he carried the tire tool with which he hit the showcase window twice. In

the other hand he carried the pillowcase into which he put as much of the jewelry, etc., as he was able to gather up. He does not deny that there were roughly thirty-one boxes taken from the window. Nor does he deny that it was seven minutes after 1 a.m. when he first struck the window with the tire tool. When he had taken the jewelry, he came out on Park Road north of the Hamilton House apartments. He made a right turn and went to the Hamilton House. He drove there as fast as he could without having a wreck, reaching speeds of up to seventy miles per hour. He was not stopped in the lot at Hamilton House for more than a minute — just long enough to pick up defendants. He has known defendant Wilson as a friend for several years and has been associated with him socially and in a business way. He has known defendant Miller for two years and ran around with him before January 1967. The man whom he was trying to locate and to whom he wanted to sell the property was Jack Fox.

Jo Nell Guest and Helen Godfrey testified in substance as follows: Defendants Miller and Wilson on the afternoon and night of 4 January 1967 were at their apartment helping them move. At about 12:25 or 12:30 a.m. that night (5 January 1967), Jerry Stutts telephoned that he wanted to get in touch with defendant Miller and was told that he was there at the apartment. Stutts asked them to bring defendant Miller out to the Hamilton House. They brought defendants Miller and Wilson to the Hamilton House in Helen Godfrey's automobile, arriving there around 1:10 a.m. Stutts was not there when they arrived, but he drove up within a few minutes. Defendants Miller and Wilson got in Stutts' car and drove away, and the two girls returned to their apartment.

Defendants contend that their motions for judgment of compulsory nonsuit, made at the close of all the evidence, on the first count in the indictment should have been sustained for the reason that there is a fatal variance between the allegation in the indictment and the proof.

The first count in the indictment charges defendants with feloniously breaking into and entering a building "occupied by one Friedman's Jewelry, a corporation." The undisputed State's evidence is that the felonious breaking and entering was in a building occupied by "Friedman's Lakewood, Incorporated"; that there are three Friedman's stores in Charlotte and that each is a separate corporation, but that all the merchandise that was stolen from the store that was broken into and entered was owned by "Friedman's Jewelry, Incorporated," with its home office located in Augusta, Georgia. In *S. v. Brown,* 263 N.C. 786, 140 S.E. 2d 413, the indictment charged defendant in the first count with feloniously breaking into and en-

tering a certain building occupied by "Stroup Sheet Metal Works, H. B. Stroup, Jr., owner," with intent to steal; the second count in the indictment charged defendant with the larceny of personal property, the property of the same owner as charged in the first count. The only evidence in the case showed that the occupant and owner was "Stroup Sheet Metal Works, a corporation." This Court held in that case the record disclosed a fatal variance between the indictment and proof, that the verdict and judgment are vacated and the case dismissed as in case of nonsuit. In accord: *S. v. Stinson*, 263 N.C. 283, 139 S.E. 2d 558; *S. v. Law*, 227 N.C. 103, 40 S.E. 2d 699; same case, *S. v. Law*, 228 N.C. 443, 45 S.E. 2d 374; *S. v. Jenkins*, 78 N.C. 478. In the instant case, the motions for judgment of compulsory nonsuit, made at the close of all the evidence, as to the first count in the indictment should have been allowed for fatal variance between the allegation in the indictment and the proof. Even so, as pointed out in *S. v. Brown, supra*, at 787, defendants' conviction in the present prosecution will not bar a subsequent prosecution based on charges correctly stating that the building in question was occupied by Friedman's Lakewood, Incorporated.

There is no merit in defendants' assignment of error that there is a fatal variance in the allegation and proof as to the second count charging a felonious larceny. The second count charges the felonious larceny of a number of specified rings of the value of $4,500, the property of "Friedman's Jewelry, a corporation," and the undisputed State's evidence is that the rings that were stolen were the property of "Friedman's Jewelry, Incorporated."

In *S. v. Davis*, 253 N.C. 224, 116 S.E. 2d 381, the Court said: "The fact that the property was stolen from T. A. Turner & Co., Inc. rather than from T. A. Turner Co., a corporation, as charged in the bill of indictment, is not a fatal variance." In *S. v. Wyatt*, 254 N.C. 220, 118 S.E. 2d 420, the indictment for embezzlement alleged ownership in the "Pestroy Exterminating Company." The bill of particulars laid the ownership in "Pestroy Exterminators, Inc.," and the witnesses in their testimony referred to both of these names and "Pestroy Exterminating Corporation" interchangeably. The Court there held no fatal variance existed between the allegation and proof, it being apparent that all the witnesses were referring to the same corporation. In the instant case it is apparent from the record that in respect to the ownership of the stolen rings all the witnesses were referring to the same corporation, also.

Defendants contend further in respect to the overruling of their motions for judgment of compulsory nonsuit, made at the close of all the evidence, as to the second count in the indictment charging a felonious larceny as follows: The State relied upon the presump-

tion that a person found in possession of recently stolen property is presumed to have been the thief; that there was no evidence that the defendants at any time had possession of any part of the jewelry or in any way assisted in the theft of the jewelry; and that at best the record shows that defendants were passengers in the car in which recently stolen jewelry was contained, and that mere presence by a passenger in an automobile containing recently stolen property does not constitute possession. Defendants rely upon the case of *S. v. Gaines*, 260 N.C. 228, 132 S.E. 2d 485. That case is distinguishable factually. In the *Gaines* case the State alone introduced evidence; the defendant introduced no evidence. The State offered in evidence statements made by Billy Hill, Gaines, and Andrews to the effect that Gaines and Andrews had nothing to do with the theft and had no knowledge that Billy Hill entered the store with intent to steal. In its opinion the Court quoted from *S. v. Carter*, 254 N.C. 475, 119 S.E. 2d 461, as follows: "When the State introduces in evidence exculpatory statements of the defendant which are not contradicted or shown to be false by any other facts or circumstances in evidence, the State is bound by these statements." And then the Court said: "Here, the statements of Billy Hill, Gaines, and Andrews, offered in evidence by the State, tend to exculpate Gaines and Andrews." In the instant case the State has introduced no evidence that tends to exculpate the present defendants; the evidence tending to exculpate them was given by their witness, Jerry Stutts. Considering the State's evidence that the store was broken into at 1:07 a.m. on 5 January 1967 and a quantity of diamond rings was stolen therefrom, that between 1:15 and 1:20 a.m. thereafter defendants and Stutts were seen riding in a Ford automobile on Park Road three or four miles away from the scene of the break-in headed north; that while a police car was following them defendant Wilson threw out of the car a pillowcase containing the stolen rings; that after the car was stopped a plastic stand stolen from the store was in the front seat lying between Stutts and the defendant Miller; and that the car was traveling at a rapid rate of speed, we are of the opinion, and so hold, that the jury would be permitted to find that the recently stolen rings came into the possession of the defendants and Jerry Stutts by their own acts or with their undoubted concurrence and so recently and under such circumstances as to give reasonable assurance that such possession could not have obtained unless the defendants as well as Stutts were the thieves, and that the defendants together with Stutts were present at the place of the felonious larceny and were aiding, abetting, assisting or advising in the commission of the larceny or were

STATE *v.* MILLER.

present for such purpose to the knowledge of the actual perpetrator, and, consequently, the jury could find that they were all principals and all equally guilty. The admissibility of circumstantial evidence, otherwise competent, to prove the commission of the offense and the guilty participation therein of the defendants may not be successfully questioned. The judge properly overruled the motion for judgment of compulsory nonsuit, made at the close of all the evidence, as to the second count in the indictment charging larceny. *S. v. Holloway,* 265 N.C. 581, 144 S.E. 2d 634; *S. v. Allison,* 265 N.C. 512, 144 S.E. 2d 578; *S. v. Gaines, supra; S. v. Hargett,* 255 N.C. 412, 121 S.E. 2d 589; *S. v. Horner,* 248 N.C. 342, 103 S.E. 2d 694; *S. v. Ham,* 238 N.C. 94, 76 S.E. 2d 346.

The speech of the solicitor for the State was taken down and transcribed by the court reporter and is in the record before us. We quote from the solicitor's speech certain parts of it challenged by defendants' assignment of error: "Do you sit there in your chairs and think for one minute that before he [Stutts] gets ready to break a man's building, that he doesn't case it from beginning to end, top to bottom and left to right. No stumble-bumble job. No teenage kid out breaking in a service station. This is big time business. You've got to realize that. I knew he was lying the minute he said that. He could tell you the name, curve and direction of every road between South Boulevard and Park Road. I believe it in my heart. He and Houston, and Mr. Miller knew exactly where they were going. Do you think this is the first time they've been in a building?"

Later on the solicitor in his speech said: "What is State's Exhibit 1-A [the small plastic stand] doing between Bill Miller and Jerry Stutts? Because they are storebreakers. Both of them. Sure, turn them loose. I could stand it myself. Personally, I could, just insofar . . . I don't own any buildings. It would be . . . it would hurt me. Turn them loose they say. And if you do, buckle your knees tight and lock your houses in the evening. Get the merchant patrol in your front yard with you, German police dogs! And when they break through your defenses, ladies and gentlemen, don't cry on me down at the solicitor's office, and say 'What are you doing about it?' I'm fighting my very heart out right now. And I'm a peace loving man. This thing of having to do this is contrary to the way my brain lies. If I thought it would do any good, I'd fall down on my knees in front of them and beg them to stay out of these people's buildings, and to lay down their burglary tools." At this point, Mr. Walker, attorney for defendant Miller, objected "to that part about other people being in buildings" and moved to strike it out. The court replied, "Well, sustained," and said to the solicitor, "Just argue

the evidence in this case, and any reasonable inferences arising therefrom." And the solicitor replied, "Yes, sir."

Defendants did not object to the first part of the above quoted argument of the solicitor, but they have an exception to it. They did object to the second part of the above quoted argument of the solicitor, but the trial judge while sustaining the objection did not instruct the jury to disregard it. Defendants properly admit in their brief that wide latitude must be given to counsel in their arguments and that as a general rule, other than in death cases, exception to improper remarks of counsel during the argument must be taken before verdict. *S. v. Smith*, 240 N.C. 631, 83 S.E. 2d 656.

In the instant case the appealing defendants did not testify in their behalf, and they did not introduce any evidence as to their reputation for character. Yet, with no supporting evidence the solicitor defiled the characters of the defendants in his argument to the jury. His remarks in this connection are accurately summarized in the briefs for the defendants: "(T)he solicitor deftly inferred that the defendants were habitual storebreakers, that they had broken into buildings before the incident charged in the indictment, that they were involved in a big time business, none of which was in evidence." The record discloses, as stated above, the solicitor said in his argument: "This is big time business . . . He and Houston and Mr. Miller knew exactly where they were going. Do you think this is the first time they've been in a building?" and "If I thought it would do any good, I'd fall down on my knees in front of them and beg them to stay out of these people's buildings, and to lay down their burglary tools," all of which is a direct statement to the effect that the present defendants are habitual storebreakers.

There is nothing in the record to justify such abuse of the defendants and it was highly objectionable. Defendants in criminal prosecutions should be convicted upon the evidence in the case, and not upon prejudice created by abuse administered by the solicitor in his argument.

*S. v. Tucker*, 190 N.C. 708, 130 S.E. 720, was a criminal prosecution tried upon an indictment charging the appealing defendant and another with violations of the prohibition laws. The State offered evidence tending to support the charges; the defendants, while offering evidence, did not go upon the stand as witnesses in their own behalf. The record discloses the following exception: Mr. J. G. Lewis, who assisted the solicitor in the prosecution of the case, made the concluding argument to the jury, and in the course of his remarks, among other things, said: "Gentlemen of the jury, look at the defendants, they look like professed (professional) bootleggers,

their looks are enough to convict them." Counsel for defendants immediately objected, but the court held the argument to be proper and overruled the objection. From an adverse verdict and judgment pronounced thereon, defendant Melvin Tucker appealed. The Court in its opinion, written by Stacy, C.J., *inter alia,* said:

". . . Similar remarks were said to be prejudicial, and were either held for error or disapproved, in *S. v. Murdock,* 183 N.C. 779; *S. v. Saleeby, ibid,* 740; *S. v. Davenport,* 156 N.C., p. 610; *S. v. Tyson,* 133 N.C., p. 699; *Jenkins v. Ore Co.,* 65 N.C. 563; *S. v. Williams, ibid,* 505; *Coble v. Coble,* 79 N.C. 589 (the 'upas-tree' case).

\* \* \*

". . . Such denunciatory comments when seriously made, are universally disapproved. Not only do we find a uniform disapproval of such remarks in our own reports, but to like effect are the expressions in other jurisdictions. (Citing authority.)."

For this improper argument by counsel for the private prosecution, the Court awarded a new trial.

Defendants assign as error this part of the solicitor's argument: "But, in order to arrive at a verdict, ladies and gentlemen of the jury, which speaks the truth, you must be able to accept the proposition that people lie. If you cannot accept that proposition there will be no justice." We think this statement by the solicitor is highly objectionable. Quite frequently conflicting evidence in a case is not due to lying but to an honest mistake or other factors, and it is unrealistic to state that if a jury cannot accept the proposition that people lie there will be no justice.

Defendants assign as error the following part of the solicitor's argument: "There is something in this case that is not very pretty. Mr. Walker, himself a former solicitor of this court until other things tempted him to the place where he now is . . ." The statement about Mr. Walker, who represented defendant Miller at the trial, is not clear, but it is manifest that it was uncomplimentary, and there is nothing in the record before us to justify it. While not so prejudicial as to warrant a new trial, we disapprove of it. Clients, not lawyers, are the litigants. Whatever may be the ill-feeling existing between clients, it should not be allowed to influence counsel in their conduct and demeanor toward each other or toward suitors in the case. All personalities between counsel should be scrupulously avoided. Canons of Professional Ethics, 62 Reports of American Bar Association 1105 § 17.

STATE, *v.* MILLER.

Defendants assign as error the solicitor's stating the following in his argument: "I knew he [Stutts] was lying the minute he said that." We disapprove of such argument. It is improper for a lawyer in his argument to assert his opinion that a witness is lying. He can argue to the jury that they should not believe a witness, but he should not call him a liar.

The Canons of Ethics and Rules of Professional Conduct of the North Carolina State Bar are found under Part II of the pamphlet entitled "North Carolina Statutes, Rules and Regulations and Ethisc Opinions of the North Carolina State Bar," issued by the North Carolina State Bar in 1961. Canon 15 reads in part as follows: "It is improper for a lawyer to assert in argument his personal belief in his client's innocence or in the justice of his cause."

Arguments to a jury should be fair and based on the evidence or on that which may be properly inferred from the case. This is said in 88 C.J.S. Trial § 169, at 337-38: "However, the liberty of argument must not degenerate into license, and the trial judge should not permit counsel in his argument to indulge in vulgarities; he should, therefore, refrain from abusive, vituperative, and opprobrious language, or from indulging in invectives, or from making any statements or reflections which have no place in argument but are only calculated to cause prejudice."

Ordinarily, the court may correct improper argument at the time or when it comes to charge the jury. *S. v. O'Neal,* 29 N.C. 251; *Melvin v. Easley,* 46 N.C. 386; *McLamb v. R. R.,* 122 N.C. 862, 29 S.E. 894; *S. v. Little,* 228 N.C. 417, 45 S.E. 2d 542. If the impropriety be gross, it is the duty of the court to interfere at once. *Jenkins v. Ore Co.,* 65 N.C. 563; *S. v. Tucker, supra.* It is especially proper for the court to intervene and exercise the power to curb improper arguments of the solicitor when the State is prosecuting one of its citizens, and should not allow the jury to be unfairly prejudiced against him. *S. v. Williams,* 65 N.C. 505. Every defendant should be made to feel that the solicitor is not his enemy, and that he is being treated fairly. *S. v. Smith,* 125 N.C. 615, 34 S.E. 235; *S. v. Tucker, supra.* Counsel have wide latitude in making their arguments to the jury. *S. v. O'Neal, supra; McLamb v. R. R., supra; S. v. Little, supra.* However, it is the duty of the judge to interfere when the remarks of counsel are not warranted by the evidence, and are calculated to mislead or prejudice the jury. *McLamb v. R. R., supra; Perry v. R. R.,* 128 N.C. 471, 39 S.E. 27; *S. v. Howley,* 220 N.C. 113, 16 S.E. 2d 705. "Courts should be very careful to safeguard the rights of litigants and to be as nearly sure as possible that each party shall stand before the jury on equal terms with his adversary, and not be hampered in the prosecution or de-

fense of his cause, by extraneous considerations, which militate against a fair hearing." *Starr v. Oil Co.*, 165 N.C. 587, 81 S.E. 776.

The remarks of the solicitor in his argument as above quoted were grossly unfair and well calculated to mislead and prejudice the jury, particularly in his references to defendants as being in effect habitual storebreakers, because defendants did not go upon the stand themselves, did not offer any evidence in respect to their reputation for character, and because there is no evidence in the record to justify a statement that defendants were habitual storebreakers. Counsel for the defendants should have objected to these improper remarks as soon as they were begun, and before they were elaborated in detail. Counsel for defendants objected several times, and the objections were sustained. The error in the case at bar consists in the fact that the court did not forbid the grossly unfair and improper argument of the solicitor well calculated to mislead and prejudice the jury in respect to their being in effect habitual storebreakers, and did not charge the jury to disregard such grossly unfair argument. To uphold the argument of the solicitor in the present case would be to sanction the vituperative language used in the present case and also to open the door for advocates generally to engage in vilification and abuse — a practice which may be all too frequent, but which the law rightfully holds in reproach. We can see how the vigorous solicitor in the heat of debate made these grossly unfair and improper remarks without conscious intent to mislead and prejudice the jury, but such remarks were disastrous to the defendants' right to a fair and impartial trial, and sitting here in calm review we are unable to overlook such a grossly unfair argument. We overrule the defendants' assignments of error to the charge because they were not made in apt time and they are not based on any exceptions duly noted. 1 Strong's N. C. Index 2d, Appeal and Error, § 24, at 146. However, this Court is vested with authority to supervise and control the proceedings of the inferior courts. N. C. Constitution, Art. IV, Sec. 8; *S. v. Cochran*, 230 N.C. 523, 53 S.E. 2d 663. This Court has exercised this power very sparingly, and rightly so.

Considering the argument of the solicitor as a whole, and particularly that part of his argument which in substance states that the appealing defendants are habitual storebreakers, we are of opinion, and so hold, that to sustain the trial below would be a manifest injustice to the defendants' right to a fair and impartial trial. Acting under the supervisory power granted to us by the State Constitution, a new trial is ordered to the end that the defendants may be tried before another jury, where passion and prejudice and

facts not in evidence may have no part. *S. v. Smith,* 240 N.C. 631, 83 S.E. 2d 656.

The record before us discloses serious misconduct on the part of a juror. After the verdict was in and judgment against the defendants was imposed and the jury had dispersed, counsel for defendant Miller made a motion for a mistrial — not a new trial — because of the misconduct of this juror. The presiding judge heard evidence and concluded as a matter of law that the misconduct of the juror did not influence the deliberation of the jury, that the defendant was not prejudiced thereby, and denied in his discretion the motion for a mistrial. Defendant Miller assigns this as error. Defendant Wilson by order of the court was given leave to make a motion for a mistrial, which motion was made and denied by the court, and defendant Wilson excepted and assigns this as error. The motions should have been for a new trial instead of a mistrial, because the trial was over when the motions were made and the jurors were dispersed. A very serious question is raised by that assignment of error, but it is not necessary for us to discuss and pass upon it for the reason that we have awarded a new trial because of the grossly unfair and prejudicial argument by the solicitor for the State, and upon a retrial the misconduct of this juror will not occur again.

We approve of what is said in *S. v. Tucker, supra:*

".  .  . We would not be understood as saying anything which might have a tendency, even in the slightest degree, to suppress the highest enthusiasm of forensic effort on behalf of the State in a criminal prosecution, or in any case at the bar, but counsel should always remember that the ends of justice are best subserved by fair, open and legitimate debate. To arrive at the exact truth, according to the facts and the law of a case, is the aim of every legal contest, and to this end the utmost power of logical reasoning may be employed. Indeed, to master the facts and to marshal them in such a way as to lay bare the truth of a matter are marks of the accomplished advocate."

For the grossly unfair and prejudicial argument of the solicitor for the State, defendants are entitled to a

New trial.